

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| In re L.M., | ) | No. ED102342 |
| | ) | |
| | ) | Appeal from the Circuit Court of |
| A Minor. | ) | Ralls County, Missouri |
| | ) | |
| | ) | Honorable David C. Mobley |
| | ) | |
| | ) | Filed: May 3, 2016 |

## OPINION

Corey Miller ("Father") appeals from the trial court's judgment granting Respondents Troy Ritter ("Great-Uncle") and Melinda Ritter's ("Great-Aunt") (collectively "Respondents") petition for letters of guardianship and conservatorship of Father's three-year-old son, L.M. ("Child"). Father raises two points on appeal: 1) that the trial court misapplied section 475.030.4(2),[1] the applicable section of Missouri's guardianship law; and 2) that the trial court's finding that Father is unfit is not supported by substantial evidence and is against the weight of the evidence. Because we find that the trial court misapplied the law and that the judgment is unsupported by substantial evidence, we reverse.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

## Facts and Procedural History

Child was born on October 4, 2012, to Father and Respondents' niece, Brooke Moore ("Mother"). During the early months of Child's life, Respondents voluntarily provided substantial babysitting assistance.

In April 2013, with Great-Aunt's assistance, Mother initiated a paternity action against Father in Marion County. Father did not contest his paternity of Child. By agreement of the parties, Respondents were allowed to intervene. The parties reached an agreement calling for Father and Mother to be awarded joint legal custody with Father to have sole physical custody subject to Mother's visitation rights pursuant to a parenting plan. The parties' agreement further called for Respondents to be allowed to exercise Mother's visitation rights if Mother failed to do so. On July 10, 2013, the court entered its judgment and parenting decree which approved the parties' above-described agreement.

Thereafter, Mother's visitation was sporadic at best and Respondents exercised Mother's visitation as permitted by the parenting plan. Father, for his part, maintained physical custody of Child. On certain occasions after September 2013, Father left Child with Respondents beyond the time set forth in the parenting plan. During a portion of that time, at least three months, Respondents charged Father on a weekly basis for their child care services. Father continued to exercise custody over Child and continued to provide for him financially, including by maintaining health insurance for Child.

From at least April 2014 until the August 2014 trial, Father followed the custody and visitation schedule set forth in the parenting plan. Child went to daycare four days a

2

week. While Father was at work and Child was not at daycare, Father's girlfriend and Father's family members cared for Child.

On April 16, 2014, Respondents filed the petition at issue on this appeal in Ralls County.[2] The petition alleged that Father and Mother were unable and/or unwilling to be Child's guardians and conservators.[3] Mother consented to the appointment of Respondents as guardians and conservators of Child. Father opposed the petition. The trial court appointed a guardian ad litem (the "GAL") to represent Child in connection with the petition.

The matter went to trial on August 20, 2014. The court took judicial notice of the paternity action mentioned above. Mother did not attend the hearing and Father's attorney informed the court that he had been unable to locate her. The court heard testimony from the parties and from the GAL who testified that he did not find Father to be an unfit parent.

On October 3, 2014, the court issued its judgment, granting Respondents' petition. The court found that Respondents possessed more stability in their lives than

---

[2] We note that Ralls County may not have been the proper venue for this case. Section 475.035 provides that the venue for the appointment of a guardian or conservator shall be in the county in this state where the minor is domiciled. The domicile of a child is that of the parent who has custody of the child. *Beckmann v. Beckmann*, 218 S.W.2d 566, 569 (Mo. 1949). Here, the petition alleged that Child was domiciled in Ralls County, Missouri, where Respondents are domiciled. This, however, is not Child's domicile. By agreement of the parties in the paternity action, physical custody of Child was with Father, who at the time this suit was filed was domiciled in Marion County where the paternity action was venued. *Beckmann*, 218 S.W.2d at 569. Section 475.040 provides that if it appears to the court that the guardianship proceeding was commenced in the wrong county, the court may on its own motion order that the proceeding be transferred to the probate division of the circuit court of another county. Because this issue was not raised at trial or on appeal, we decline to review the question.

[3] The petition did not allege that Father was unfit but we assume that the parties tried this issue by consent.

3

Father and that Respondents' past behavior exemplified a more stable life than Father's. The court found that Father's lifestyle and circumstance were not conducive to a stable environment. The court noted that Father had been in at least three relationships since Child was born, including one with Mother, and had moved in with his current girlfriend after a very short period of time. The court concluded that Child had more stability in his life when he was with Respondents than when Child was with Father and found Child's best interests were served by placing his custody with Respondents. The court concluded as a result of this comparison between Respondents and Father, that both Father and Mother were unfit. Nevertheless, the court found that Child's best interests required Father to be allowed substantial, unsupervised visitation with Child. This appeal follows.

## Standard of Review

The trial court's judgment in guardianship proceedings is to be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In Matter of J.D.D.*, 450 S.W.3d 836, 840 (Mo.App.E.D. 2014); *Blakely v. Blakely*, 83 S.W.3d 537, 540 (Mo.banc 2002). A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations, and a court will only overturn a judgment under these fact-based standards of review when the court has a firm belief that the judgment is wrong. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo.banc 2012). Due regard is given to the trial court to judge the credibility of the witnesses. *In re Estate of A.T.*, 327 S.W.3d 1, 2 (Mo.App.E.D. 2010).

4

We apply *de novo* review, however, to questions of law decided in court-tried cases. *Pearson*, 367 S.W.3d at 43. Statutory interpretation is an issue of law that this court reviews *de novo*. *Blakely*, 83 S.W.3d at 540. When presented with an issue of mixed questions of law and fact, we defer to the trial court's factual findings so long as they are supported by competent, substantial evidence, but review *de novo* the application of the law to those facts. *Pearson*, 367 S.W.3d at 44.

## Discussion

### A. The interest of a parent in the care, custody, and control of a child is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court.

At the outset of our analysis, we are guided by certain fundamental constitutional principles governing the rights of parents as acknowledged by the United States Supreme Court and recently recognized by this court in *T.W. ex rel. R.W. v. T.H.*, 393 S.W.3d 144, 147-48 (Mo.App.E.D. 2013):

> The Fourteenth Amendment to the United States Constitution provides
> that no State shall "deprive any person of life, liberty, or property, without
> due process of law." The United States Supreme Court has long
> recognized that the Fourteenth Amendment's Due Process Clause, like its
> Fifth Amendment counterpart, guarantees more than fair process. *Troxel
> v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion). The Clause
> includes a substantive component, providing greater protection against
> government interference with certain fundamental rights and liberty
> interests. *Id.* The liberty interest at issue in this case—the interest of a
> parent in the care, custody, and control of her child—is perhaps the oldest
> of the fundamental liberty interests recognized by the United States
> Supreme Court. *Id.*

### B. Missouri's guardianship statutes

With this constitutional backdrop, we turn to Missouri's statutory framework governing the issues in this case. There are three principal statutes that govern the

5

guardianship of a minor. *In re Estate of A.T.*, 327 S.W.3d at 2 (citing *Flynn v. Flynn*, 34 S.W.3d 209, 211 (Mo.App.E.D. 2000)). Section 475.025 provides that the father and mother are the natural guardians of their children and have "the custody and care of their persons and education." Section 475.030.4(2) authorizes the court to issue letters of guardianship over a minor in three circumstances, including, as is relevant here, where the parent or parents are unwilling, unable, or adjudged unfit to assume the duties of guardianship. Section 475.045.1 provides that the parent or parents of a minor shall be appointed as guardians except where the parent or parents are adjudged unfit for those duties, waive their rights to be appointed, or when letters of guardianship and conservatorship are issued pursuant to section 475.030. Section 475.045.3 provides that if no parent is appointed under subsection 1 of this section, the court shall appoint as guardian or conservator the most suitable person who is willing to serve and whose appointment serves the best interest of the child to a stable and permanent placement.

Reading these statutes together, a court should not appoint a guardian for a child unless there is no parent available, willing, and able to care and provide for the child. *In re Estate of A.T.*, 327 S.W.3d at 2 (citing *Flynn*, 34 S.W.3d at 211). Importantly, these statutes create a rebuttable presumption that a parent is the appropriate custodian for his or her child. *In re Estate of A.T.*, 327 S.W.3d at 2 (citing *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo.banc 1998)). That presumption can be overcome, however, if there is sufficient evidence presented that the parent is unfit, unwilling, or unable to take charge of the child. *In the Matter of J.D.D.*, 450 S.W.3d at 841.

Missouri law allows for the appointment of a guardian over a minor as a stop-gap measure to provide for the care and custody of a minor for the period of time when the

6

parent is unable, unwilling, or unfit to perform his or her parental functions. See *Flathers v. Flathers*, 948 S.W.2d 463, 468 (Mo.App.W.D. 1997). However, we are mindful that an order of guardianship can have the effect of terminating the parental right of custody to a child. See *Piedimonte v. Nissen*, 817 S.W.2d 260, 269 (Mo.App.W.D. 1991) (noting that the effect of the guardianship order was to terminate the parental right of custody on a finding of ordinary neglect). Given that an order of guardianship can abrogate or abridge the rights of parents, the standards provided by the guardianship statutes must be followed. See *Cotton*, 977 S.W.2d at 265.

Once a parent has been found unfit in a guardianship proceeding, the burden of proving that the parent is fit to assume custody of a child shifts to the parent and the statutory presumption in favor of the parent as the custodian is removed. *In re Estate of Moreau*, 168 S.W.3d 548, 551 (Mo.App.S.D. 2005). To terminate the guardianship of a third party, the burden of proof is on the parent to prove by a preponderance of the evidence that the parent is fit, suitable, and able to assume the duties of guardianship and that it is in the best interest of the minor that the guardianship be terminated. See § 475.083.2(3), 6; *In re Schnieders*, 178 S.W.3d 632, 634 (Mo.App.W.D. 2005). A parent can only file a petition to terminate guardianship once every 180 days. § 475.083.6.

## C. The presumption in favor of parents versus third parties in connection with the guardianship of their children.

The presumption in favor of parents as a child's guardians is rooted in fundamental liberty interests founded in the United States and Missouri constitutions. See *Troxel*, 530 U.S. at 65; *T.W. ex rel R.W.*, 393 S.W.3d at 147-48; § 475.045. In Missouri, a parent does not stand on equal legal footing with a third party in the context

7

of the guardianship of the child. § 475.045. The parent is entitled to the presumption that the parent is the appropriate custodian for his or her child until this presumption is rebutted and the statutes allowing a parent to be stripped of the right to the custody of his or her child must be followed.

This principle was illustrated by the Missouri Supreme Court in *Cotton v. Wise*, 977 S.W.2d 263 (Mo.banc 1998). In *Cotton*, the trial court granted the petition for guardianship filed by an older half-sister on behalf of her two younger half-sisters over the father's objection. The Supreme Court reversed, holding that the trial court misapplied Missouri's guardianship law when it compared the parents with the third party (older half-sister) as if they were equals under the law in order to determine what was in the best interests of the children. *Id.* at 264-66.

The Court noted that the record was replete with references to the father's deficiencies as a parent and that "[t]he record supports the trial court's conclusion that granting custody to [half-sister] is in the children's best interest." *Id.* at 264. The Court concluded, however, that under the guardianship statute, the question was not which party better served the children's best interest. *Id.* Rather, when one of the parties was the children's parent, the question was whether the parent was "unwilling, unable or adjudged to be unfit to assume the duties of guardianship." *Id.* In this regard, the trial court had misapplied the law.

The Court rejected sister's arguments that the trial court's extensive discussion of father's shortcomings suggested that he was unfit, unable, or unwilling to care for the children or that the trial court's decision granting her guardianship amounted to such a finding. *Id.* The Court suggested that while the trial court's recitation of facts was "some

8

proof" that father was unfit, unable, or unwilling to care for his children, there must be a finding that the parent is unfit, unable, or unwilling to care for his children. *Id.* This determination must be made "in the first instance" based on the evidence and due regard to the presumption in favor of the parent. *Id.* And the determination should be based not only on present circumstances, but on the parent's history of dealing with the children. *Id.* (citing *Reece*, 890 S.W.2d at 710-11).

D. **The trial court misapplied the guardianship statute because the court's finding of unfitness on the part of Father and award of guardianship to Respondents resulted entirely from the court's comparison of the relative merits of Father with those of Respondents.**

A review of the court's analysis demonstrates that the court failed to follow the guardianship statutes and the reasoning and holding in *Cotton*. The court relied heavily on *In re Moreau v. Royster*, 18 S.W.3d 447, 449 (Mo.App.S.D. 2000), for the proposition that in a contest between a parent and a third party, a finding of "unfitness" could be made by comparing the relative merits of a parent with a third party. This approach was rejected recently in *In re Estate of L.G.T. v. N.R.*, 442 S.W.3d 96, 112 (Mo.App.S.D. 2014), where the court held that the determination of parental unfitness may not be made by comparing the relative merits of the parent with those of a third party seeking the guardianship over the child. We agree.

This is because under section 475.030.4(2), the determination of unfitness must be made in the first instance by the trial court after reviewing all the evidence and giving due regard to the presumption in favor of the parent and the question of a child's best interest is not reached unless the trial court has found the parent to be unwilling, unable or

9

adjudged unfit to assume the duties of guardianship. *Cotton*, 977 S.W.2d at 264-65; *In re Estate of L.G.T.*, 442 S.W.3d at 111; See also *In re Estate of A.T.*, 327 S.W.3d at 2 n. 3.

Here, the trial court erred in declaring and applying the law by considering Child's best interests as between Father and Respondents before first determining whether Father was fit to be Child's guardian. At this stage of the inquiry, the trial court had to independently determine Father's fitness to be Child's guardian in light of the presumption that Father is Child's appropriate custodian. *Cotton*, 977 S.W.2d at 264. The essence of the trial court's judgment, however, is that the court believed Respondents would provide Child more stability. The court should not have considered this without first making an independent determination regarding Father's fitness to be Child's guardian. Because the trial court did not make this determination first and independently of the best interests of the child analysis, the judgment must be reversed.

**E. Respondents failed to overcome the presumption that Father is Child's appropriate custodian and the court's finding of unfitness on the part of Father is unsupported by substantial evidence.**

In order to overcome the presumption that Father is the appropriate custodian of Child, Respondents were required to present evidence showing that Father was unfit, unwilling, or unable to take charge of Child. *In the Matter of J.D.D.*, 450 S.W.3d at 841. In determining a parent's fitness to serve as a child's guardian, courts have considered the stability in a parent's life, the care the parent would be able to provide on a daily basis, the environment in which the child would be raised, the amount of effort made by the parent to furnish any financial support, and the parent's mental health. See *id.* at 842.

10

Another factor that may be considered is the moral environment to which the child will be subjected, but the analysis is not about condemnation nor approval of a moral standard. See *Massman v. Massman*, 784 S.W.2d 848, 849 (Mo.App.E.D. 1990). Rather, the issue is whether the conduct is detrimental to the child's welfare and there must be evidence that the parent's conduct has had or will have an adverse impact on the child. *Id.* Finally, whether a parent is unfit must be based on existing conditions, but past conditions may illuminate the understanding of present conditions. *In re Estate of L.G.T.*, 442 S.W.3d at 112.

Here, there is no substantial evidence in the record to support a finding that Father is unfit. Indeed, we find that the reasons the trial court set forth for finding Father unfit are insufficient as a matter of law. The court noted that since the birth of Child, Father has been in at least three relationships, had been in a relationship with Mother even after a safety plan was set up by the Children's Division, and chose to move in with his current girlfriend after a very short period of time. However, there was no evidence that any of Father's past relationships had any adverse impact on Child and the evidence shows that since at least February 2014, Father has been in one relationship with his current girlfriend with whom he has been living since that time. Given that the evidence shows that Father provides Child with adequate care and there was no evidence that any of Father's past or current relationships had any negative impact on Child, we find that Father's conduct in this regard is insufficient to support a finding of unfitness.

Moreover, it bears repeating that in July 2013, in connection with the paternity action which they encouraged Mother to file, Respondents agreed to a consent judgment with Father in which they agreed that Child's best interests were served by Father having

11

joint legal custody and sole physical custody of Child. Thereafter, Father exercised his parental rights as guardian for Child and provided for Child's custody and care. The evidence consisting of the consent judgment from the paternity action was before the court and we find it represents substantial evidence that at a minimum in July 2013, Father was deemed fit enough by the court in the paternity action -- and by Respondents who agreed to the consent judgment -- to have joint legal and sole physical custody of Child.

Yet, just nine months after the consent judgment was entered, Respondents filed the petition at issue here. While the record here certainly attributes to Father certain deficiencies in comparison to Respondents' lifestyle, we are not persuaded that there was such a change in circumstances between July 2013 and April 2014 that would justify a complete reversal in terms of an assessment of Father's fitness. Cf. § 452.410 ("[T]he court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the bests interests of the child.").

While a change in circumstances in this context is not mentioned by the guardianship statutes, "[t]he rationale for requiring a substantial change in the circumstances of the child or the custodian, whether parent or third party, includes the desire to maintain a stable nurturing environment for the child," and further supports that Father should remain as Child's custodian. See *Searcy v. Seedorff*, 8 S.W.3d 113, 117 (Mo.banc 1999).

12

Moreover, the record actually appears to support that the only change from the prior paternity judgment to the time of the filing of the petition here was that Father's fitness as a parent seemed to have improved. The GAL opined that Father had gotten his act together and that Father is "certainly" not an "unfit parent." In addition, the court's decision to award Father unsupervised visitation also reflects favorably on Father's fitness and appears at odds with a finding of unfitness.

## Conclusion

For the reasons stated above, the trial court's judgment is reversed and remanded with instructions to dismiss the petition and order that Child be returned to Father's custody with such custody to proceed pursuant to the terms of the judgment from the paternity action.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J. dissents in a separate opinion.
Lawrence E. Mooney, J., concurs.

13



# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

In re L.M., ) No. ED102342
)
    A Minor. ) Appeal from the Circuit Court
) of Ralls County
)
) Honorable David C. Mobley
)
)   Filed: May 3, 2016

I respectfully dissent. For the reasons discussed below and based upon this Court's standard of review, I would affirm the trial court's judgment granting Respondents Troy and Melinda Ritter's ("Petitioners") petition for letters of guardianship and conservatorship of Appellant Corey Miller's ("Father") three-year-old son, L.M.

## I. BACKGROUND

This is a close case[1] involving two diametrically opposed theories and conflicting testimony. On the one hand, Petitioners argued and presented testimony that Father was unable or unwilling to care for L.M. and that the appointment of Petitioners as guardians and conservators would serve the best interests of L.M. On the other hand, Father argued, by cross-examining Petitioners' witnesses and by presenting conflicting testimony of his own, that he was fit to care for L.M. and the appointment of Petitioners as guardians and conservators would not

---

[1] After the guardian ad litem ("GAL") testified he did not find Father to be an unfit parent, he added, "that's about as close as I'm able to call it." The GAL also testified he was unable to make a recommendation on the issue of guardianship because "I really find it almost too close to call."

serve the best interests of L.M.  The trial court's judgment and credibility findings reflect the court believed Petitioners' theory and evidence over Father's, and I would find our standard of review requires our Court to uphold that decision.

In its judgment granting Petitioners' petition for letters of guardianship and conservatorship, the trial court found, "Petitioners currently possess more stability in their lives and their past conduct further exemplifies a stable life . . .. [Father's] life style [sic] and circumstance, as they currently exist, and as shown by his past conduct, are not conducive to a stable home environment."  In addition, the trial court found Father was unfit and that "[c]urrently, the best interests of [L.M.] are served [by] placing his custody with Petitioners." The trial court additionally found:

> The [c]ourt has considered the testimony of each witness and has made judgments regarding the credibility of each witness.  The [c]ourt has accepted some of the witnesses as credible and rejected the other parts of the testimony of witnesses as not credible.  Findings and conclusions of law made by the [c]ourt are consistent with the [c]ourt's determination of the credibility of the evidence and of the witnesses.

The trial court's judgment also awarded Father unsupervised visitation of L.M.  Father appeals.

## II.    STANDARD OF REVIEW AND GENERAL LAW

As with any court-tried case, our Court will affirm a trial court's judgment involving guardianship proceedings unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *In the Matter of S.J.M.*, 453 S.W.3d 340, 342 (Mo. App. E.D. 2015).  "We review questions of law de novo, but in reviewing questions of fact, we defer to the fact-finder."  *In re Estate of L.G.T.*, 442 S.W.3d 96, 100 (Mo. App. S.D. 2014) (emphasis omitted).

> Appellate courts defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be

2

completely revealed by the record. The appellate court's role is not to re-evaluate testimony through its own perspective.

*Id*. (quoting *White v. Director of Revenue*, 321 S.W.3d 298, 308-09 (Mo. banc 2010)) (internal citations and emphasis omitted).

Accordingly, in determining whether a trial court's judgment is supported by substantial evidence, an appellate court views the evidence in the light most favorable to the judgment, disregards all contrary evidence, and defers to the trial court's credibility determinations. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (quoting *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 394 (Mo. banc 2001)). Finally, our Court will only overturn a judgment under fact-based standards of review when we have a firm belief that the judgment is wrong. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

The term "unfit" is not defined in Missouri's guardianship statutes, but case law has given the term a broad definition and courts are given considerable discretion in applying that term. *L.G.T.*, 442 S.W.3d at 111. Factors to consider include the stability in a parent's life, the environment in which the child would be raised, and the parent's efforts to furnish personal and financial support to the child. *In Matter of J.D.D.*, 450 S.W.3d 836, 842 (Mo. App. E.D. 2014). Although the decision of whether a natural parent is unfit to have custody of his child must be based on existing conditions, the past may illuminate the understanding of present conditions. *L.G.T.*, 442 S.W.3d at 112. Generally, where a parent is adjudged unfit to be his child's guardian or conservator, "the court shall appoint as a guardian or conservator of a minor the most suitable person who is willing to serve and whose appointment serves the best interest of the child to a stable and permanent placement." Section 475.045.1 and .3 RSMo Supp. 2010.

3

## III.    DISCUSSION

In this case, I agree that the trial court misapplied the law only to the extent its award of guardianship and conservatorship to Petitioners resulted from the court's comparison of the relative merits of Father with those of Petitioners.  *See L.G.T.*, 442 S.W.3d at 112.  However, this in and of itself does not mean the trial court's judgment must be reversed because the trial court relied on many factors to reach its decision.  *See id.*  As the Southern District found in *L.G.T.*, I would find that to the extent "the trial court was under any such mistaken notion" "that a determination of parental unfitness may be made by comparing the relative merits of a natural parent with those of the proposed guardian[s]," "it would not be fatal to the judgment because substantial evidence supported the trial court's finding that [Father] was unfit."  *Id.*  Similarly, I would affirm the trial court's judgment based upon the standard of review.  *See id.* at 112-17.

Here, Petitioners testified, (1) L.M. developed severe and reoccurring diaper rash while under Father's care; (2) Father did not provide health insurance for L.M.; (3) Father failed to take L.M. to the eye doctor even though L.M. was running into walls and L.M.'s natural mother was seventy-percent blind; (4) L.M. had a problem with biting which increased while he was under Father's care; (5) L.M. repeatedly had blisters on his feet from wearing shoes that did not fit him while he was under Father's care; (6) Father would inconsistently parent L.M. depending on whether Father had a girlfriend, and when Father did not have a girlfriend he would "choose[ ] to step out of [L.M.'s] life" and allow Petitioners to care for L.M.; (7) when L.M. was a baby and would cry, Father would "bounce him uncontrollably"; (8) when L.M. would throw up, Father would care more about the vomit getting on the furniture than on L.M.; and (9) Father clothed L.M. only in a onesie when it was cold outside.  In addition, Father's former neighbor testified

4

L.M. was sometimes present during incidents where Father and his girlfriend were fighting, using many swear words, and throwing items around the yard.[2]

Viewing the evidence and inferences therefrom in the light most favorable to the judgment, disregarding all contrary evidence, and deferring to the trial court's credibility determinations, I would find there is substantial evidence to support the trial court's finding that Father was unfit. *See J.D.D.*, 450 S.W.3d at 842 ("[w]hen proof is made that no natural parent is fulfilling parental duties, then appointment of a statutory guardian is necessary"); *In re K.J.R.H.*, 330 S.W.3d 821, 822, 823 (Mo. App. S.D. 2011) (the trial court did not err in finding a father was unfit where there was "ample evidence that [he] was not ready to parent [the child]," including his lack of insurance and problems with anger management). Although Father contested Petitioners' witnesses' testimony, through cross-examination and by presenting contrary testimony, we must defer to the trial court's credibility determinations under these circumstances. *L.G.T.*, 442 S.W.3d at 100. It bears repeating that "[t]he appellate court's role is not to re-evaluate testimony through its own perspective." *Id.* (quotations omitted).

Finally, I disagree that an order of guardianship and conservatorship in this case would have the effect of terminating Father's parental rights to L.M. where the judgment awarded Father unsupervised visitation of L.M. In addition, if Petitioners were ultimately awarded guardianship and conservatorship of L.M., Father could file a petition to terminate Petitioners' guardianship and conservatorship once every 180 days. Section 475.083.6 RSMo Supp. 2002; *see also* section 475.083.2(3) RSMo Supp. 2002 (a trial court may terminate a guardianship and

---

[2] Some but not all of the evidence discussed in this section is referred to in the trial court's judgment. In particular, the trial court found Father's former neighbor "testified witnessing much fighting, use of vulgar language, and things being thrown at each other in the front yard and sometimes when [L.M.] was present." The trial court also found "[t]he evidence suggests [Father] is most interested in having custody of [L.M.] when he has a girlfriend."

conservatorship "[i]f the court finds that a parent is fit, suitable and able to assume the duties of guardianship and it is in the best interest of the minor that the guardianship be terminated").

## IV.  CONCLUSION

In sum, based upon the language in *L.G.T.* indicating reversal is not necessary due to the extent the trial court misapplied the law, the standard of review, as well as the record and issues presented on appeal to this Court, I do not have a firm belief that the trial court's decision finding Father unfit is wrong.  In addition, I do not have a firm belief that the trial court's decision finding the best interests of L.M. were served by placing his custody with Petitioners as of the time of the judgment is wrong given the evidence presented that Petitioners adequately cared for and provided stability for L.M. since he was born.  Therefore, I would affirm the trial court's judgment granting Petitioners' petition for letters of guardianship and conservatorship of L.M.


ROBERT M. CLAYTON III, Presiding Judge