

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE ESTATE OF R.M.T., MINOR; | ) |
| | ) |
| | ) WD82184 |
| BONITA ANN TIPTON, | ) |
| | ) OPINION FILED: June 25, 2019 |
| Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| JOSEPH W. MEYERS, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Caldwell County, Missouri**
The Honorable Jason A. Kanoy, Judge

Before Division One: Victor C. Howard, Presiding Judge, Lisa White Hardwick, Judge
and Gary D. Witt, Judge

Appellant Joseph Meyers ("Father") appeals the order of the probate division of the

Circuit Court of Caldwell County, appointing Bonita Tipton ("Grandmother") guardian of

R.M.T ("Child"). On appeal, Father argues that the circuit court erred in determining that

he was unwilling, unable, or unfit to assume the duties of guardianship over Child. We

affirm.

## Factual Background

Child was born on September 24, 2007, to Father and Barbara Tipton ("Mother"). Grandmother is Child's maternal grandmother. In 2017, Mother was granted sole legal and physical custody of Child and Father was ordered to pay child support ("2017 Modification"). Mother had issues with drugs and at one point had been incarcerated due to these issues. Child began living with Grandmother in Hamilton, Mo. on February 15, 2018. On April 18, 2018, Grandmother filed a petition seeking to be appointed as guardian of Child ("Petition"). At the time of the guardianship hearing, Mother was not incarcerated and resided in Chillicothe, Mo. even though Child was residing with Grandmother. Mother consented to the appointment. Father filed an answer opposing the appointment.

The trial was held on September 28, 2018.[1] Grandmother testified that Father had not had visitation with Child since August 14, 2016. At that time, Child had stayed with Father for approximately six weeks. Grandmother alleged that when she and Mother met Father to pick-up Child, Father's wife ("Step-Mother") grabbed Child by the arm, which Child had recently broken, spun Child by the arm, and told her to get back into Father's vehicle. Child broke free and returned to Grandmother's vehicle and the three drove to the police station and Mother and Child went in to file a report. Grandmother alleged that Child had shared that she was rarely allowed to call home and that, when she did, Step-

---

[1] The transcript of the trial notes 44 times that the testimony or question is "indiscernible." At times this occurs during testimony relevant to this Court's review. No party challenges the sufficiency of the transcript or our ability to review the issues presented based on these transcript issues. The trial court needs to take appropriate measures to ensure that future trials are recorded with sufficient clarity to allow a full transcript to be prepared so that a new trial is not required. *See A.J.M. v. Greene County Juvenile Office,* 158 S.W.3d 878 (Mo. App. S.D. 2005).

2

Mother was always present listening. Child was allegedly forced to eat spilled food off the floor and at one point had been locked out of the house. Father denied any knowledge of these incidents. Grandmother testified that she felt that Father was unfit because he did not protect Child from Step-Mother.

Grandmother also testified that between the summer of 2016 and the 2017 Modification, Father was supposed to have visitation every third weekend of the month but he failed to exercise this right. Following the 2017 Modification, visitation was dependent upon the agreement of the parties but Father did not attempt any visitation until two weeks before the hearing on the guardianship. Father and Child spoke on "Facebook or messaging" and on one occasion arranged for him to come visit but ultimately Father did not come nor did he communicate why he did not attend. Child was emotionally upset by him failing to show up.

Father had been paying child support to Mother although it is unclear from the legal file when that began. Father testified that he was not aware that Child was residing with Grandmother and that, despite attempts to locate her, he only became aware of her whereabouts after he was served with the Petition. Father maintained that the 2016 visit with Child had been good and there were no issues between Child and Step-Mother. Father alleged that at the 2017 Modification hearing he "didn't have a lawyer. . . . I was not allowed to represent myself to find out anything or ask any questions or nothing. I was told that I can't say anything." Father also justified his failure to attend the recent visitation by saying "How do I know when I come up here to see her if that [sic] I'm going to be driving all the way up here and no one shows up?"

Step-Mother also testified that Mother was the aggressor in the 2016 altercation. Further, Step-Mother testified that she and Child "get along . . . just great."

Mother did not attend the hearing.

Following the hearing, the court granted Grandmother guardianship finding in relevant part:

> Court finds natural mother has consented to appointment of guardian. Court finds natural father has abandoned minor child and is, therefore, unwilling to provide care for minor child. Court, therefore, finds minor child in need of guardian. Court finds petitioner is fit and proper individual to serve as guardian for child.

This appeal followed.

## Standard of Review

"As in other bench-tried cases, this Court will affirm the judgment unless it incorrectly declares or applies the law, is not supported by substantial evidence, or is against the weight of the evidence." *In re A.L.R.*, 511 S.W.3d 408, 411-12 (Mo. banc 2017).

> A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations, and a court will only overturn a judgment under these fact-based standards of review when the court has a firm belief that the judgment is wrong. *Pearson v. Koster,* 367 S.W.3d 36, 43 (Mo. banc 2012). Due regard is given to the trial court to judge the credibility of the witnesses. *In re Estate of A.T.,* 327 S.W.3d 1, 2 (Mo. App. E.D. 2010).

*In re L.M.*, 488 S.W.3d 210, 214 (Mo. App. E.D. 2016). Questions of law are decided *de novo*. *Id.* "When presented with an issue of mixed questions of law and fact, we defer to

4

the trial court's factual findings so long as they are supported by competent, substantial evidence, but review *de novo* the application of the law to those facts." *Id.*

## Discussion

Father's sole point on appeal is that the circuit court erred in awarding Grandmother guardianship of Child because there was "no evidence" that Father was unwilling, unable, or unfit to have custody over Child.

In Missouri, there is a rebuttable presumption that a natural parent should have custody over his or her child. *In re Estate of A.T.*, 327 S.W.3d 1, 2 (Mo. App. E.D. 2010). That presumption, however, is overcome if there is sufficient evidence presented that the parent is unfit, unwilling, or unable to take charge of the child. *In the Matter of J.D.D.*, 450 S.W.3d 836, 841 (Mo. App. E.D. 2014). "[A] court should not appoint a guardian for a child unless there is no parent available, willing, and able to care and provide for the child." *In re L.M.*, 488 S.W.3d at 215 (citing *In re Estate of A.T.*, 327 S.W.3d at 2)). Third-parties do not stand on equal footing to parents, and the presumption that a parent should be the custodian remains until they have been demonstrated to be unfit, unwilling, or unable. *Id.* This is true even when the court makes a determination that granting guardianship to a close relative is in the best interest of the child. *See Cotton v. Wise*, 977 S.W.2d 263 (Mo. banc 1998).

In this case, the court determined was that Father was "unwilling" to act as guardian because he had already "abandoned" Child. "In the context of Missouri's guardianship statutes, the terms "unwilling" and "unable" are not well defined." *In re Matter of T.A.P.*, 953 S.W.2d 638, 642 (Mo. App. S.D. 1997). As the Court discussed in *In re T.A.P.*:

5

One commentator notes that the terms unwilling and unable "essentially refer to a species of abandonment of the child." 4B JOHN A. BORRON, JR., MISSOURI PRACTICE, PROBATE AND SURROGATE LAWS MANUAL 20 (1995). Where termination of parental rights is at issue, Missouri courts describe abandonment as: (1) a parent voluntarily and intentionally relinquishing the custody of the child to someone else with the intent to never claim parental rights, nor perform parental duties; or (2) a parent withholding intentionally from the child, without a just cause or excuse, his or her presence, care, love, and protection, as well as maintenance and the opportunity for displaying filial affection. *H.W.S. v. C.T.,* 827 S.W.2d 237, 239–240 (Mo. App. 1992); *S.C.H. v. C.W.H.,* 587 S.W.2d 945, 947 (Mo. App. 1979).

*Id.*

Giving deference to the court's factual findings, the evidence at the guardianship hearing showed that Father had not exercised any visitation with Child in the two years prior to the guardianship hearing. Although Father testified that he was unaware of Child's location or that she was living with Grandmother so could not exercise visitation, the court was free to disbelieve this testimony. *In re L.M.*, 488 S.W.3d at 214 ("Due regard is given to the trial court to judge the credibility of the witnesses."). Child did not began living with Grandmother until 2018 and Father offered no explanation why he was not aware of Child's location prior to her moving in with Grandmother. Further, in 2017, Mother was granted sole physical and legal custody.[2] Father was granted visitation rights but failed to exercise them. When Father did finally arrange for a visit with Child, just two weeks before the

---

[2] *See In re L.M.*, 488 S.W.3d at 218. In *In re L.M.*, great-uncle and great-aunt sought guardianship over the child. The court noted that, only nine months prior to the request for guardianship, child's father had been granted sole physical custody and the petitioners had consented to that judgment. The Court noted that, although the guardianship statutes do not themselves discuss the change in circumstances necessary for a custody modification there is an interplay between guardianship and custody. The Court in *In re L.M.* found that the recent custody judgment served as "further support" that father should remain as child's custodian rather than giving guardianship to aunt and uncle. *Id.* "The rationale for requiring a substantial change in the circumstances of the child or the custodian, whether parent or third party, includes the desire to maintain a stable nurturing environment for the child. . . ." *Id.* (quoting *Searcy v. Seedorff*, 8 S.W.3d 113, 117 (Mo. banc 1999)).

guardianship hearing, Father failed to appear. Father's only justification for failing to attend the visitation was to state that he had no way of knowing whether Child would have been there. There was also evidence that Father and Child communicated through "Facebook or messaging" but Father fails to explain why he could not have learned Child's location during these communications.

Certainly there was some evidence to support a finding that Father had not abandoned his daughter. He was paying child support at the time of the hearing and had been doing so since at least 2017. He also opposed the guardianship petition and stated that he desired to have custody of Child. However, the determination as to whether a parent is unfit, unable, or unwilling is "based not only on present circumstances, but on the natural parent's history of dealing with the [child]." *Cotton*, 977 S.W.2d at 265. Father had not seen Child since 2016 and offered little justification for such a lapse. Most telling was that only two weeks before trial Father failed to show for what would have been his first visitation with Child in over two years. His testimony regarding his behavior showed little concern as to his behavior's effect on Child. Even given a presumption of parental custody, we cannot say that there was insufficient evidence to support the circuit court's findings. Despite Father's statement that he was willing to have custody, Grandmother put forth sufficient evidence to support the circuit court's finding that Father had abandoned Child in failing to see her in over two years and was unwilling or unable to act as Child's custodian.

## Conclusion

For the reasons stated above, the circuit court did not err in finding that there was sufficient evidence to demonstrate Father was unwilling or unable to take custody of Child. As such, the trial court did not err in granting Grandmother's Petition. Judgment affirmed.

_____
Gary D. Witt, Judge

All concur