

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| IN THE MATTER OF: G.H., | ) | No. ED112324 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| | ) | Cause No. 23CG-PR00189 |
| | ) | |
| | ) | Honorable Julia M. Koester |
| | ) | |
| | ) | FILED: December 10, 2024 |

Opinion

Maternal Grandmother and Step-Grandfather (Grandparents[1]) appeal from the circuit court's judgment appointing Maternal Grandmother as sole guardian and conservator for minor child (Child), excluding Maternal Step-Grandfather as co-guardian and co-conservator, and awarding visitation with Child to Respondent (Paternal Grandmother), after granting Paternal Grandmother's motion to intervene in the guardianship case. Point One alleges the circuit court erred by granting Paternal Grandmother's motion to intervene despite the motion's noncompliance with Rule 52.12,[2] which requires a pleading to be filed with the motion. Point Two alleges Paternal Grandmother failed to plead any request for visitation with Child, hence the circuit court erred by awarding her visitation. Point Three alleges Paternal Grandmother had no

[1] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).
[2] All Rule references are to M. R. Civ. P. (2023) unless otherwise noted.

standing to seek visitation with Child under § 452.402, RSMo (Cum. Supp. 2019),[3] the grandparent visitation statute, thus the circuit court erred by granting her visitation. In their fourth and final point, Grandparents allege the circuit court erred in denying Maternal Step-Grandfather's co-guardianship and co-conservatorship petition in that the court based its decision on factors beyond those listed in § 475.045.3, RSMo (Cum. Supp. 2019), pertaining to suitability of guardians. We hold the circuit court erred in awarding Paternal Grandmother visitation with Child as she was without standing to seek such relief. Additionally, the circuit court erred in denying Maternal Step-Grandfather's petition to serve as co-guardian and co-conservator for Child as the circuit court's determination was not based solely on the requirements of § 475.045.3.

In so holding, we grant Points Three and Four, which are dispositive of this appeal, so we need not reach Points One and Two. Accordingly, we reverse the circuit court's order and judgment awarding Paternal Grandmother visitation with Child. We affirm the judgment in part granting Maternal Grandmother guardianship and conservatorship of Child but we remand for the circuit court to reconsider, exclusively pursuant to the factors in § 475.045.3, Maternal Step-Grandfather's petition to serve as co-guardian and co-conservator of Child.

Background

*Procedural History*

Child was born to Mother and Father in 2021. At the time of Child's birth, Mother and Father were unmarried. In 2022, Child was removed from Mother's custody by Children's Division due to Mother and Child testing positive for drugs, and a juvenile court case was initiated. While the juvenile case was pending, Child was placed with Grandparents. At the time

---

[3] All Section references are to RSMo. (2016), unless otherwise noted.

of placement, Child was nine months old, and Child has remained in the home of Grandparents ever since. In July of 2023, Grandparents petitioned for joint guardianship and conservatorship over Child. Child's Mother consented to the guardianship. Father was incarcerated during the duration of the case and did not consent to guardianship. In September of 2023, Paternal Grandmother moved to intervene, stating she wished to be considered as a guardian for Child. Paternal Grandmother's one-page motion to intervene read as follows:

> Comes now the paternal grandmother, by her attorney, and moves the court to allow her to intervene in this case as a party, and in support of same, states the following:
> 1. As the paternal grandparent, she is entitled to be a party, especially in this case where both parents are unable to have custody.
> 2. She has been somewhat involved in this case, but desires to be involved fully as a party.
> 3. As she understands guardianship is being considered, she wishes to be considered for same.
> 4. Here involvement will assist father in being involved in the case better.
> 5. She believes her involvement is in the best interests of the child.
> 6. While she knows she will need to work to fully catch up with what has happened, she promises to use her efforts to do so.
> WHEREFORE [G]randmother asks the court to add her as a party and gran[t] time to catch up on the case before any major decisions take place, and for such other and further relief as the court deems proper.[4]

No pleadings were filed with Paternal Grandmother's motion to intervene.[5] Grandparents filed a memorandum in opposition to Paternal Grandmother's motion to intervene, and Paternal Grandmother was permitted to intervene over their objection. Paternal Grandfather, who was married to Paternal Grandmother and resided with her, did not request to intervene in the case.

*Evidentiary Hearing*

An evidentiary hearing was held on the guardianship petition in December of 2023. There, testimony was adduced from various witnesses including Grandparents, Paternal

---

[4] Document appears as filed except for grammatical corrections in brackets.

[5] On appeal, the parties also dispute whether Paternal Grandmother's motion to intervene was sufficient under Rule 52.12, which requires filing attached pleadings to the motion to intervene. We agree that such statutory requirements must be followed, however, the point is resolved on the preliminary issue of justiciability.

Grandmother, and Paternal Grandfather. At the hearing, Paternal Grandmother, through counsel, waived any objection to Grandparents' appointment as Child's guardians and clarified that she was only seeking visitation.

Maternal Step-Grandfather testified he married Maternal Grandmother in 2005, when Child's Mother was approximately eight-years-old. Maternal Step-Grandfather testified to the circumstances that caused Child to be placed in his home. He also testified Child's environment in Grandparents' home was "stable" and "nurturing." Evidence was adduced that sometime after Child was placed with Grandparents, Paternal Grandmother asked to have visitation with Child. During the pendency of the juvenile case, visits were coordinated by Grandparents and Paternal Grandmother and were not court ordered. Grandparents cooperated with the family support team's request in facilitating visits with Paternal Grandmother, despite Grandparents' concerns that the visits disrupted Child's schedule, that the custodial exchanges caused stress to Child, and that Child's demeanor was drastically affected after weekend visits with Paternal Grandparents. The visits progressed from infrequent visits to every other weekend. Grandparents recorded some of the exchanges in an effort to document Child's distress during the transitions. Maternal Grandmother's testimony closely mirrored Maternal Step-Grandfather's testimony.

Paternal Grandmother testified and contradicted many of Grandparents' assertions. Paternal Grandmother attested that visitation exchanges were generally smooth and that when Child visited her home, Child's demeanor was not affected or abnormally aggressive. Paternal Grandmother testified Grandparents frequently changed the visitation schedule, sometimes cancelling the night before an exchange was set to occur. Paternal Grandmother testified that Child had a good bond with her and Paternal Grandfather and that, during the visits, Paternal Grandmother would facilitate video calls between Child and her Father, who was incarcerated.

Furthermore, Paternal Grandmother indicated Child had other half-siblings who would visit her home at the same time as Child. When questioned, Paternal Grandmother could not explain why her husband did not join her motion to intervene. Paternal Grandfather also testified and described an acrimonious relationship between the two sets of grandparents. Paternal Grandparents expressed concern that without an order for visitation they might not be able to see Child once Grandparents became Child's guardians.

An employee of Children's Division involved in the Child's underlying juvenile court case also testified. She opined that both sets of grandparents would be unable to work out a visitation schedule without a court ordered plan. A Juvenile Officer previously involved with the case also testified. She stated that the case goal in the juvenile case was guardianship with Grandparents, and if the circuit court granted Grandparents guardianship, then the underlying juvenile case would be dismissed, regardless of whether visitation with Paternal Grandmother were ordered. Juvenile Officer also testified about a single incident where she witnessed Maternal Step-Grandfather in an intoxicated state, but stated that in her opinion said incident would not prohibit Grandparents from being appointed guardians. Both the Juvenile Officer and Children's Division worker testified that they believed visits with Paternal Grandparents would be in Child's best interests.

The guardian ad litem (GAL) recommended awarding sole guardianship to Maternal Grandmother. GAL testified Maternal Step-Grandfather was not a biological relative to Child and should not be granted guardianship, as GAL believed he would be resistant to Child having visitation with Paternal Grandmother. GAL opined that if Maternal Grandmother alone were to be appointed Child's Guardian, it would be more likely that the lines of communication would open up between the two Grandmothers. GAL testified to witnessing several visitation

exchanges between the grandparents and noted she did not witness any adverse behavior from Child on those occasions. In addition to recommending an award of sole guardianship to Maternal Grandmother, GAL recommended ordering visitation with Paternal Grandmother from Friday to Sunday as part of the guardianship.

The circuit court entered its order and judgment on December 18, 2023, granting Maternal Grandmother guardianship of Child, awarding Paternal Grandmother visitation every other weekend from Friday at 11am to Sunday at 5pm, and excluding Maternal Step-Grandfather as co-guardian of Child. Maternal Grandmother and Step-Grandfather appealed. Paternal Grandmother as Intervenor did not file a brief with this Court, hence we rely solely on the record on appeal and on Grandparents' brief.

Discussion

## I.     Point Three—Paternal Grandmother Lacked Standing to Seek Visitation with Child

Grandparents assert in Point Three that the circuit court erred in awarding visitation to Paternal Grandmother because she lacked standing to seek visitation of Child pursuant to § 452.402. As grandparents have no common law right to visitation, and any right to visitation is purely statutory, we turn to the statutory requirements in § 452.402 to determine standing. *See X.P.E.L. by Next Friend C.T.*, v. *J.L.L.*, 627 S.W.3d 592, 596 (Mo. App. E.D. 2021) (internal citation omitted)). We find that under this record, Paternal Grandmother cannot satisfy the conditions necessary to have standing to seek grandparent visitation under to § 452.402. Thus, we grant Point Three.

### A.     Standard of Review

"When the facts are not in dispute and the Court is tasked with reviewing whether the law was properly applied to the facts, the Court's review is *de novo*." *Robinson v. Missouri Dept. of*

6

*Health & Senior Servs.*, 672 S.W.3d 224, 231 (Mo. banc 2023) (citing *City of Harrisonville v. Bd. Of Trs. Of Mo. Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. banc 2022)).

  B.  <u>Analysis of Standing to Seek Visitation Pursuant to §452.402</u>

  Grandparents do not have visitation rights under common law as it is a right only granted exclusively by statute. *X.P.E.L.*, 627 S.W.3d at 596. Section 452.402 governs the situations in which grandparents can be granted visitation. The statute provides the circuit court authority to award visitation to grandparents when a grandparent has been unreasonably denied visitation for over sixty days and (1) married parents are divorcing; or (2) one parent is deceased and the surviving parent denies reasonable visitation to the other grandparents; or (3) the child resided with grandparents for six months of the previous twenty-four months prior to requesting visitation. § 452.402. Grandparents seeking visitation under this statute must satisfy both the unreasonable denial of visitation for sixty days ***and*** one of the above enumerated conditions. *X.P.E.L.*, 627 S.W.3d at 597.

  In *X.P.E.L.*, we found that a paternal grandmother who intervened in father's paternity action against the child's mother had no standing to seek grandparent visitation under § 452.402. *Id.* at 602. There, no evidence existed that grandmother had been unreasonably denied visitation for over sixty days, and the matter did not involve a dissolution action between the parents. *Id.* at 603. Furthermore, the facts did not support standing under the remaining statutory subsections. *Id.* at 602. In *X.P.E.L.*, as in the case at bar, it is imperative that a grandparent requesting visitation under § 452.402 meet the statutory requirements in order to have standing to seek relief. *See id.*

  Here, as in *X.P.E.L.*, Paternal Grandmother cannot satisfy any provision of § 452.402 that would entitle her to seek grandparent visitation. *See id.* Applying the first § 452.402 requirement to the facts, it is clear that at the time of the guardianship hearing on December 4,

2023, Paternal Grandmother had regular visits with Child, including a visit as recently as October 21, 2023, where the hand-off of Child between the parties was videotaped. The time period between October 21 and December 4, 2023 was forty-four days, far short of the sixty-day period of denied visitation required by § 452.402.1. *See id.* at 603 (citing § 452.402.1). Because Paternal Grandmother is required to satisfy § 452.402.1 ***and*** one of the three included subsections, her failure to satisfy § 452.402.1 is dispositive and denies her standing to seek grandparent visitation under this statute. *See id.* at 603. What is more, none of the other statutory avenues to visitation are present in the record here. *See id.* (citing § 452.402).

Moreover, it is important to note the purpose of these proceedings was to assign a guardian for Child, not determine visitation. By also determining visitation along with appointing a guardian, the circuit court interfered with Maternal Grandmother's rights, powers, and duties as a guardian under § 475.120, RSMo (Cum. Supp. 2021). Section 475.120 grants to a guardian—among other rights and duties—the custody and control of the child and the duty to provide for the child's education, support, and maintenance. § 475.120.1. Maternal Grandmother was granted care and custody of Child, and the letters of guardianship "empower[ed] [her] to perform the duties of guardian and conservator as provided by law under the supervision of the court," thus she alone has control over Child, including control over visitation by others, such as Paternal Grandmother. *See Hanson v. Carroll*, 527 S.W.3d 849, 854 (Mo. banc 2017) (citing § 475.120.1). To award visitation in a letter of guardianship is to impede the legal rights of the legal guardians as set forth in § 475.120.1.

We find the circuit court erred in awarding Paternal Grandmother visitation with child as she was without standing to seek such relief. *See X.P.E.L.*, 627 S.W.3d at 602; *see also*

8

*Robinson*, 672 S.W.3d at 231 (citing *City of Harrisonville*, 655 S.W.3d at 774).  Point Three is granted.

**II.      Point Four—Circuit Court Erred in Denying Maternal Step-Grandfather's Petition to Serve as Co-guardian and Co-conservator for Child**

Grandparents allege the circuit court erred by denying them joint guardianship and conservatorship over Child.  Grandparents argue the court improperly based its decision on factors not included in § 475.045.3 and erroneously relied on the factors listed in § 452.375.2, RSMo (Cum. Supp. 2023) to exclude Maternal Step-Grandfather.  Because the record indicates that the circuit court considered factors beyond those enumerated in § 475.045.3 in excluding Maternal Step-Grandfather as joint guardian and conservator, we find the circuit court's judgment misapplied the law.

A.      Standard of Review

Appellate review of questions of law are reviewed de novo.  *Robinson*, 672 S.W.3d at 231 (citing *City of Harrisonville*, 655 S.W.3d at 774).  When reviewing the circuit court's judgment in a guardianship case, we will affirm the circuit court's judgment unless it is "unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *In re L.M.*, 488 S.W.3d 210, 214 (Mo. App. E.D. 2016) (internal citation omitted)).

B.      Analysis of Factors Required for Appointment of Guardians

In custody proceedings, § 452.375.2 lists the factors that are ***required*** to be considered by the circuit court when determining what custody arrangement is in the best interests of a child. *In re C.C.S.*, 393 S.W.3d 105, 109–10 (Mo. App. W.D. 2013) (citing § 452.375.2)).  Conversely, in a guardianship proceeding, the circuit court is not required to apply § 452.375.2 because the plain text of § 452.375.2 requires an analysis beyond deciding the "stable and permanent

9

placement" of a minor child. which is all that is required under § 475.045.3, governing appointments of guardians. *Id.* (citing §§ 475.045.3, 452.375.2).

When both parents have been deemed unwilling, unfit, or unable to appropriately care for their child, the factors meant to prevent parental alienation and intended to foster frequent, continuing, and meaningful contact between a child and both parents do not apply. *Id.* Moreover, in a guardianship proceeding, the circuit court is not required to consider the preference of a child under the age of fourteen as to his or her guardian. In contrast, in custody proceedings the child's wishes as to his or her custodial placement must be considered as required by § 452.375.2. *Id.* The two causes of action are distinct as to their purposes and statutory requirements. Undoubtedly, there may be certain factors enumerated in § 452.375.2 that might be relevant to the circuit court's analysis of whether the appointment of a particular guardian serves the best interests of the child. However, the factors of § 475.375.2 are applicable "only to the extent they impact the suitability of the potential guardian and the child's best interests to a stable and permanent placement." *Id.*

In *C.C.S.*, the circuit court was called upon to choose between competing guardianship petitions—one filed by the biological mother's friend whom the child had lived with for the majority of his life, and the other filed by the child's biological grandmother. *Id.* at 108. Despite the child being familiar with the home of the mother's friend, it was an unsuitable environment due to domestic abuse and multiple visits by law enforcement to the home. *Id.* at 111–12. Mother's friend also suffered from significant health issues. *Id.* On the other hand, Children's Division found biological grandmother did not have significant health problems, her home was safe and suitable, and the GAL recommended the child be placed in her care. *Id.* The circuit court appointed biological grandmother as guardian and the decision was affirmed by the

10

appellate court. *Id.* at 108. While the appellate court acknowledged that the circuit court is not required to analyze the § 452.375.2 factors in a guardianship action, it noted the circuit court's consideration of the mental and physical health of potential guardians and history of abuse were relevant to determining the child's best interests with respect to a stable and permanent placement. *Id.* at 110. *C.C.S.* thereby suggests that some of the § 452.375.2 factors might be relevant in a guardianship cause of action, if those factors impact the child's best interests to a stable and permanent placement. *Id.* at 110. In so stating, the court expounded,

> Many of these factors [in § 452.375.2] are not applicable to guardianship proceedings. Factors (1), (2), (3), (4), and (7) primarily concern fostering the child's relationship with both parents—a concern that is always relevant in determining the child's best interests in a custody proceeding but may not be relevant in a guardianship action where, as here, both parents are unwilling, unable, or unfit to assume guardianship. . . . As for the other factors in Section 452.375.2, the child's adjustment to his home, school, and community and the mental and physical health of all individuals involved, including any history of abuse, while they might also be applicable to guardianship proceedings, those factors would be relevant only to the extent they impact the suitability of the potential guardian and the child's best interests to a stable and permanent placement.

*Id.*

Here, as in *C.C.S.*, the circuit court was limited to applying the factors in § 475.045 when determining whether Grandparents' appointment as co-guardians served Child's best interests in having a stable and permanent placement. *Id.* Given the circuit court's judgment, it appears that the court applied the factors in § 452.375 as would be appropriate for custody determination in a domestic relations matter or deciding between competing guardianship petitions. *Id.* Neither of these situations are applicable in this case.

The record shows that Grandparents resided in the same home, jointly provided care for Child throughout the pendency of the underlying juvenile case, and provided a stable home for Child. At the guardianship hearing, Juvenile Officer testified that, despite one isolated incident

11

of Maternal Step-Grandparent's intoxication and his alleged resistance to Child's reunification with Mother, the Juvenile Office's case goal was still placement of Child with Grandparents as co-guardians, not guardianship plus visitation for Parental Grandparents or sole guardianship to Maternal Grandmother.

No evidence in the record suggests that Grandparents' home was unsuitable as a "stable and permanent placement" as defined by § 475.045.3. Maternal Step-Grandfather testified that Child had developed a bond with him and Maternal Grandmother. He also testified that Child received proper medical care while in their home. Grandparents submitted financial reports, completed background checks, and were willing to provide for Child's care, education, and support if appointed as guardians. Moreover, Mother consented to Grandparents acting as co-guardians and conservators for Child. Additionally, Paternal-Grandmother waived any objection to Grandparents serving as Child's guardians. Viewing this evidence as a whole indicates that both Maternal Grandparents are willing and able candidates to provide a "stable and permanent placement" for Child and thus satisfy § 475.045.3.

The only evidence adduced at the guardianship hearing in opposition to a co-appointment of Grandparents as guardians was from GAL. GAL was opposed to Maternal Step-Grandfather being appointed as guardian because GAL perceived he was unsupportive of reunification with Mother during the juvenile case. Reunification with a natural parent is not a proper consideration for the circuit court in a guardianship hearing, particularly not in one in which Child's mother has consented to the guardianship. *See* § 475.045. GAL's recommendation was primarily founded on her concern that Maternal-Step Grandfather would make Child's visitation with Paternal Grandmother challenging. GAL's opinion pertaining to whether Grandparents would continue voluntarily permitting visitation with Paternal Grandmother is not an appropriate

12

factor for the circuit court to consider when determining whether Grandparents can provide Child with a "stable and permanent placement." *See* § 475.045.3.

Considering that the record was replete with evidence in favor of Grandparents serving as Child's co-guardians, we are left to speculate as to the circuit court's reasoning in excluding Maternal Step-Grandfather as co-guardian.[6] Consequently, we can only assume the circuit court analyzed factors beyond those necessary to discern the "stable and permanent" placement for Child. *See In re C.C.S.*, 393 S.W.3d at 110. As such, we find the circuit court misapplied the law by applying factors beyond those relevant to § 475.045.3 in making its determination to exclude Maternal Step-Grandfather as co-guardian and conservator for child. *See In re L.M.*, 488 S.W.3d at 214 (internal citation omitted). Point Four is granted.

<u>Conclusion</u>

The judgment of the circuit court is affirmed in part, reversed in part, and remanded in part. We affirm the circuit court's judgment appointing Maternal Grandmother guardian and conservator of Child. We reverse the circuit court's award of visitation to Paternal Grandmother. We remand the case for the circuit court to reconsider Maternal Step-Grandfather's petition to serve as co-guardian and co-conservator for Child exclusively applying the factors listed in § 475.045.3.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Lorne Baker, Sp. J., concur.

---

[6] The judgment did not set forth a detailed analysis for why guardianship was not granted jointly to Grandparents.

13