Unfortunately, this Court's rules did not keep up with the 1997 legislative changes in section 512.050. In 1993, Rule 81.04 required, in pertinent part:
(a) Filing the Notice of Appeal. When an appeal is permitted by law from a trial court, a party may appeal from a judgment or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final.
....
(c) Docket Fees. The docket fee of fifty dollars in the appellate court shall be deposited with the trial court at the time of filing the notice of appeal. No notice of appeal shall be accepted and filed by the clerk of any trial court unless the docket fee is deposited therewith. If a notice of appeal is accepted without timely payment, the appeal may be dismissed by the appellate court.
*883 Rule 81.04 (1993) (emphasis added). This Court and the appellate courts treated these requirements as jurisdictional and dismissed appeals when no docket fee was filed.[3]
In 1994, this Court revised Rule 81.04 by deleting the final sentence, which had stated, "If a notice of appeal is accepted without timely payment, the appeal may be dismissed by the appellate court." See Rule 81.04(c) (1994). On its face, this revision seems to have negated the previous requirement that the docket fee needed to be paid for the appeal to become effective. But Rule 81.04(e) continued to require, for the notice of appeal to be accepted:
The trial court clerk shall note the date a notice of appeal was received if it is accompanied by: (1) The docket fee; or (2) A statement citing specific statutory or other authority demonstrating a docket fee is not required by law; or (3) A motion to prosecute the appeal in forma pauperis.
Rule 81.04(e) (2018). Not surprisingly, the courts have continued to dismiss appeals when no docket fee, statement in lieu of the fee, or motion to proceed in forma pauperis was timely filed, as occurred in this case. See, e.g., Harris v. Wallace, 524 S.W.3d 88, 89 (Mo. App. 2017) ("The trial clerk was prohibited from filing the tendered Notice of Appeal ... because it was without any docket fee, statement citing specific statutory authority demonstrating a docket fee is not required by law, or motion to prosecute the appeal in forma pauperis. ").[4]
Mr. Goldsby nonetheless is correct that to interpret Rule 81.04(e)'s requirement of a docket fee as necessary for the notice of appeal to be valid would violate article V, section 5 's prohibition on this Court establishing rules affecting the statutory right to appeal. Under article V, section 5, it is for the legislature to set the requirements for the right to appeal. In section 512.050, the legislature has done so. It requires only the filing of a notice of appeal and specifically provides that while this Court may impose additional requirements for prosecuting an appeal, those requirements cannot affect "the validity of the appeal." § 512.050, RSMo 2016 .
In other words, as section 512.050 no longer requires the filing of a docket fee for a notice of appeal to be effective, this Court may not so require either. State ex rel. JCA Architects, Inc. v. Schmidt, 751 S.W.2d 756 (Mo. banc 1988) , is instructive on this point. At issue in JCA were section 512.180.1, RSMo 1986, which at that time provided, "Any person aggrieved by a judgment in a civil case tried without a jury before an associate circuit judge ... shall have the right of a trial de novo in all *884 cases where the petition claims damages not to exceed five thousand dollars," and section 512.090, RSMo 1986, which at that time provided, "The right of a trial de novo provided in subsection 1 of section 512.180 shall be perfected by filing an application for trial de novo with the clerk serving the associate circuit judge within ten days after the judgment is rendered ," JCA, 751 S.W.2d at 756-57 (emphasis added). As is evident, section 512.090, RSMo 1986, did not require that a docket fee be submitted at the time of seeking a trial de novo.
Camden County Rule 5(1), however, provided, "No clerk shall accept any petition or other original pleading unless the [docket] fee, as aforesaid, has been paid...." JCA, 751 S.W.2d at 757 . The circuit court accordingly dismissed the application for trial de novo when the appellant failed to pay the docket fee. Id. This Court reversed. It held Camden County could not impose a docket fee when section 512.090, RSMo 1986, "ma[de] no reference to the payment of a [docket] fee," for under article V, section 5, the "Circuit Court is without power to impose jurisdictional requirements in addition to those set out in the statutes." JCA, 751 S.W.2d at 757. As under section 512.090, RSMo 1986, payment of the docket fee at the time of filing for trial de novo was not made "a jurisdictional prerequisite," JCA, 751 S.W.2d at 757, once plaintiff filed for trial do novo then plaintiff:
was in full compliance with all statutory jurisdictional requirements, and the circuit court had the mandatory duty to proceed with the trial de novo, even though the [docket] fee was not paid until after the time for filing the application for trial de novo had expired.
Id. (emphasis added).
Most importantly for present purposes, JCA then distinguished the absence of a docket fee requirement in section 512.090 from the presence of a docket fee requirement in the then extant 1987 version of section 512.050 to show the legislature knew how to make a docket fee a jurisdictional prerequisite when it wanted to, stating if payment of a docket fee were a jurisdictional prerequisite to a trial de novo, the legislature would have explicitly so provided, "as was done in § 512.050, RSMo 1986, (the foundation for Rule 81.04(c) ), which provides that the docket fee must be paid at the time a notice of appeal to an appellate court is filed. " JCA, 751 S.W.2d at 757 (emphasis added).
Because section 512.050 was amended in 1997, after the decision in JCA , to delete the requirement of a docket fee as a jurisdictional prerequisite to appeal, JCA 's rationale for distinguishing section 512.050 from section 512.190 in JCA is no longer valid. Rather, under JCA 's reasoning, this Court lost the authority to impose a jurisdictional docket fee prerequisite when the legislature removed the docket fee language from section 512.050 in 1997. JCA, 751 S.W.2d at 757 ; Mo. Const. art. V, § 5. Section 512.050 allows this Court to require the filing of a docket fee as a procedural step for completing an appeal but not as a jurisdictional requirement. To the extent the cases cited above and other cases hold otherwise, they are no longer to be followed.
This Court has jurisdiction over Mr. Goldsby's appeal because he timely filed his notice of appeal on August 5, 2016, which is within 10 days of the entry of final judgment on July 27, 2016. Because the payment of a docket fee is not a jurisdictional prerequisite, Mr. Goldsby's untimely payment is governed by Rule 84.08, which provides:
After the timely filing of a notice of appeal, if the appellant fails to take the further steps required to secure review *885 of the appeal within the periods of time allowed or as extended, the clerk shall place the case on a dismissal docket. The clerk shall notify all parties that the appeal will be dismissed unless the appellant remedies the default before a specified date. The date shall not be less than 15 days from the date of the notice. If the default is not remedied by that date, an order of dismissal shall be entered.
(Emphasis added). Under Rule 84.08, Mr. Goldsby was entitled to notice of the procedural defect in failing to file the docket fee and no less than 15 days to remedy the default by filing the docket fee before the appeal could be dismissed. Here, the circuit clerk acknowledged the receipt of Mr. Goldsby's docket fee only 11 days after his judgment became final. Under Rule 84.08, his notice of appeal was timely and having remedied the defect in failing to file the docket fee with the notice of appeal within 15 days, the appellate court erred in dismissing his appeal as untimely.
IV. GOLDSBY'S PETITION FAILED TO STATE A CLAIM
Mr. Goldsby's petition for declaratory judgment asked the circuit court to compel DOC to provide him with a release date for his life sentence for rape-that is, the date the sentence would end were he to serve his life sentence. Mr. Goldsby notes, under section 216.355, certain persons serving term-of-year sentences were entitled to release once they had served three-fourths of their sentence. This became known as the "three-fourths rule." Parrish v. Wyrick, 589 S.W.2d 74, 77 (Mo. App. 1979) . While section 216.355 does not expressly provide it applies to those serving a life sentence, Mr. Goldsby's petition argues it does because "[t]he original statute '[Convicts]' (1879) para 2., stated that 9/12ths of a life sentence is 15 years, thus, 12/12ths should be a simple mathematical equation, resulting in a term of years, at 20 years."[5]
Mr. Goldsby acknowledges section 216.355 was repealed when the criminal code was revised effective in 1979 and does not apply to crimes committed thereafter. § 216.355 (repealed 1977); § 558.011, RSMo Supp. 1979. But he says the section was still in effect when he committed the rape in 1972 and, therefore, it applies to him under section 556.031, RSMo Supp. 1979,[6] and requires DOC to calculate his release date as 20 years from the date he began to serve his rape sentence in 1997.[7] DOC argues, to the contrary, his life sentence is of indeterminate length so he has *886 no release date, although DOC has notified Mr. Goldsby it has scheduled a parole hearing for January 2020.[8]
For numerous reasons, DOC is correct that section 216.355 does not require it to set a release date for Mr. Goldsby. This is best explained by examining the history of the "three-fourths rule" on which Mr. Goldsby relies. The original version of that law was adopted in 1865 in an act titled "Convicts," which provided:
§ 1 That when any person imprisoned in the Penitentiary of the State of Missouri shall have, during the whole time of his or her imprisonment, behaved according to the rules and regulations of that institution, to the full satisfaction of the Inspectors, then the said Inspectors, on the expiration of three-fourths of the time for which such person was sentenced, shall write and sign a testimony to that effect and present the same to the Governor of Missouri, with a recommendation that such person be pardoned.
§ 2 That the same shall be done in regard to the persons under the sentence of imprisonment for life, after having been imprisoned for fifteen years and complied with the conditions named in the foregoing section.
Mo. Laws 1865-6, p.19, § 1-2.
By its terms, the 1865 law cited by Mr. Goldsby applied only to those who served without violating any rules or regulations. Mr. Goldsby has had 15 conduct violations. The statute also did not entitle the prisoner to release but merely to a recommendation of release, which was then left to the governor's discretion. Id. Finally, it did not provide that 15 years was three-fourths of a life sentence so that a life sentence would be construed as 20 years, as Mr. Goldsby seems to contend. It simply provided those serving life sentences were entitled to a recommendation for release just as were those who had served three-fourths of their term-of-years sentence, if they had good behavior. For all of these reasons, even were the 1865 law still in effect it would not provide a basis to require DOC to determine a release date for Mr. Goldsby's life sentence.
Equally important, no law equivalent to section 2 of the 1865 law is now in effect. The 1865 "three-fourths rule" law was amended in 1879 when the legislature adopted Mo. Laws 1879, § 6533. As codified, the statute contained only section 1 of the 1865 law, which it amended to provide that prisoners who served without conduct violations could be released after serving three-fourths of their sentence as if they had served their full terms without the need for a gubernatorial pardon:
Any convict who is now or may hereafter be confined in the penitentiary, and who shall serve three-fourths of the time for which he or she may have been sentenced in an orderly and peaceable manner, without having any such infraction of the rules of the prison or laws of the same recorded against such convict, he or she shall be discharged in the same manner as if said convict had served the full time for which sentenced, and in such case no pardon from the governor shall be required.
Id. § 6533.
The section of the 1865 law formerly providing for release of those with a life *887 sentence on good behavior after serving 15 years is conspicuously absent from the 1879 statute. This Court interpreted the 1879 statute in Ex parte Collins, 94 Mo. 22, 6 S.W. 345 (Mo. 1887) , in which an inmate sentenced to life in prison filed a petition for habeas corpus seeking to be discharged under the three-fourths rule. After explaining the 1879 statute "relates only to those who have served three-fourths of the time for which they were sentenced," this Court held the "expiration of such a period cannot be affirmed of one sentenced for life. " Id. at 346 (emphasis in original). Mr. Goldsby is serving a life sentence and would not have been entitled to a release date under the 1879 version of the three-fourths rule.
Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100 (Mo. 1951) , specifically reaffirmed Collins ' statement that the three-fourths rule does not apply to life sentences. It stated, while "[b]etween 1865 and 1879, the legislature expressly made the three-fourths rule applicable to life convicts after 15 years imprisonment[,] [t]his provision ... was eliminated in [an] 1879 revision" to the three-fourths rule and is no longer in effect. Id. at 103.
When Missouri's statutes were revised in 1955, the three-fourths rule became section 216.355, RSMo 1955, and provided:
Any person who is now or may hereafter be confined in any institution within the division and who shall serve three-fourths of the time for which he was sentenced in an orderly and peaceable manner, without having any infraction of the rules or laws of the institution recorded against him, shall be discharged in the same manner as if he had served the full time for which sentenced. In such case no pardon from the governor shall be required.
Id. The three-fourths rule remained codified in section 216.355 without material amendment until repealed in the new criminal code then in effect when Mr. Goldsby committed the rape for which he was convicted in 1990. § 216.355 ; Parrish, 589 S.W.2d at 77 . Under Collins and Hunter , section 216.355 did not apply to Mr. Goldsby. For this reason, his two prior attempts to seek release under section 215.355 were met with failure. This attempt to set a release date is similarly doomed.
Mr. Goldsby argues that unlike his two prior attempts at release,[9] here he is not seeking release but merely is seeking to have a release date determined, so the prior cases do not apply. While he is correct collateral estoppel applies to facts, not to legal reasoning, see Hudson v. Carr, 668 S.W.2d 68, 70 (Mo. banc 1984) ("The nature of collateral estoppel is such that a fact appropriately determined in one lawsuit is given effect in another case involving different issues."), DOC is correct that the same erroneous interpretation of Missouri laws that previously led Mr. Goldsby to believe he was entitled to release underlies his claim that he is entitled to have DOC set a release date.
Applying the reasoning in Collins and Hunter demonstrates Mr. Goldsby is not entitled to either release or the setting of a release date because the three-fourths rule of section 1 of the 1865 law did not apply to life sentences, the 15-year rule set out *888 in section 2 of that law applied only to those without conduct violations such as those incurred by Mr. Goldsby, and section 2 has not been the law of Missouri since 1879. Mr. Goldsby, therefore, is not entitled to a calculation of his release date on his life sentence under the three-fourths rule because he has no release date.[10]
V. CONCLUSION
Mr. Goldsby's notice of appeal was timely, but because he is serving a life sentence, the circuit court did not err in holding DOC is not required to set a release date. The judgment is affirmed.
All concur.

See, e.g., Moore ex rel. Moore v. Bi-State Dev. Agency, 87 S.W.3d 279, 296 (Mo. App. 2002), citing, Kattering v. Franz, 360 Mo. 854, 231 S.W.2d 148 (Mo. 1950) ("[W]e continue to hold that no valid filing of a notice of appeal occurs until the docket fee is paid."); see also State v. Mitchell, 128 S.W.3d 518, 520 (Mo. App. 2003), quoting, State v. Brookshire, 400 S.W.2d 61, 63 (Mo. 1966) ("[T]he court does not have jurisdiction over an appeal when the notice of appeal is 'not timely filed because the docket fee, without which the notice of appeal is ineffective, was not deposited with the circuit court within ten days after the order became final.' ").

See also State ex rel. Anderson v. Anderson, 186 S.W.3d 924, 927 (Mo. App. 2006) ("Only when the Notice of Appeal was accompanied by the required docket fee on August 9, 2005 was it capable of being accepted for filing and was, in fact, legally filed. Because the last day to timely file a Notice of Appeal was August 1, 2005, the filing on August 9, 2005, being eight days too late, was untimely.") (citations omitted); In re B.W.B., 73 S.W.3d 894, 896 (Mo. App. 2002) ("[W]e conclude the notice of appeal was not filed in this case on July 6, 2001, because the docket fee was not paid until July 17, 2001.").

In fact, as discussed below, the original statute referred to serving three-fourths of a sentence, not nine-twelfths. The "nine-twelfths" language appears to have been taken by Mr. Goldsby from State ex rel. Nixon v. Pennoyer, 36 S.W.3d 767 (Mo. App. 2000) , discussing "good time credits" granted under the 1969 version of section 216.355.

Section 556.031 provides "any offense committed prior to January 1, 1979 ... must be construed and punished according to the provisions of law existing at the time of the commission thereof." Cavallaro v. Groose, 908 S.W.2d 133 (Mo. banc 1995), held, if a parole statute entitled a prisoner to release upon occurrence of a certain event, then a later revision to the statute would not be applied retroactively to deprive him of the right acquired under the earlier statute. Id. at 135-36 . Mr. Goldsby appears to argue he had a vested right in release after serving 15 years under the law in effect when he committed his crime in 1972, which could not be taken away after the law was repealed in 1979 even though he was not sentenced for his crime until 1990. DOC argues it does not matter which statute applies for he never was entitled to a release date under any statute. This Court agrees with DOC for the reasons stated in the remainder of this opinion.

Mr. Goldsby completed his 10-year kidnapping sentence in 1997 and began serving his life sentence for rape, after which he will serve his 25-year sentence for assault.

This date presumably is set under section 558.019, which provides, when determining the "time required to be served by [an] offender before he or she is eligible for parole, conditional release or other early release by the department of corrections," a "sentence of life shall be calculated to be thirty years." Unlike the statute cited by Mr. Goldsby, this statute does not provide a release date by which the prisoner will have served his entire sentence but rather provides a date by which the inmate may be eligible for parole.

Contrary to Mr. Goldsby's assertions, the rulings in these prior cases involving earlier attempts to secure his release were attached to the pleadings and so could be considered for their factual relevance without turning the matter into one that had to "be treated as one for summary judgment and disposed of as provided in Rule 74.04." Rule 55.27; see Chesterfield Vill., Inc. v. City of Chesterfield, 64 S.W.3d 315, 318 n.1 (Mo. banc 2002) (A judgment from a prior action was described in the petition and attached as an exhibit in a subsequent action, "so the circuit court had the earlier judgment before it and did not need to refer to matters outside the pleadings.").

Mr. Goldsby's brief further seeks a declaration of his rights under sections 559.260, RSMo 1969, and 546.490. At the time of his crimes, section 559.260 provided, "Every person who shall be convicted of rape ... shall suffer death, or be punished by imprisonment in the penitentiary for not less than two years, in the discretion of the jury." Section 546.490 provided, "whenever any offender is declared by law punishable, upon conviction, by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such as are prescribed." It is not clear how these statutes contribute to Mr. Goldsby's argument.