In the
 Missouri Court of Appeals
 Western District
 IN THE INTEREST OF: B.K.F, II )
 AND D.J.F.; )
 ) WD84019 Consolidated with
 D.Q., Respondent, ) WD84020, WD84042 and WD84043
 and )
 JUVENILE OFFICER, ) OPINION FILED: May 11, 2021
 )
 Respondent, )
 )
 v. )
 )
 M.K.F., )
 )
 Appellant. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Jon E. Beetem, Judge

 Before Division Three: Thomas H. Newton, Presiding Judge, Gary D. Witt, Judge and
 W. Douglas Thomson, Judge

 In this consolidated appeal, M.K.F. ("Mother") appeals from the judgment of the

Circuit Court of Cole County, Missouri ("trial court"), closing two juvenile cases and

appointing the paternal grandmother as guardian for two of Mother's children, B.K.F. and
D.J.F. ("the Children").1 On appeal, Mother argues that the trial court's judgments were

against the weight of the evidence.2 We affirm.

 Factual and Procedural Background

 B.K.F. (DOB December 20, 2011), D.J.F. (DOB April. 22, 2013), and their two

older brothers, were previously in foster care for two-and-a-half years. They had been

previously removed from Mother's care due to unsanitary living conditions. Mother had

not been working the "permanency plan,"3 and the case was proceeding toward termination

of parental rights, but then Mother became pregnant again, and that child's father

encouraged her to work her permanency plan. The Children were returned to Mother's care

on November 7, 2017.4 The Children were only in Mother's care for a few weeks when a

family friend who was taking care of the Children noticed bruising on D.J.F. The friend

reported suspected abuse, and the four children not already in foster care were again

removed from Mother's home, which was determined to be without electricity. Mother's

then-boyfriend was charged with abuse of D.J.F., but Mother did not want him to leave the

home. B.K.F. and D.J.F. were eventually placed with their paternal grandmother, Donna

Quenga ("Grandmother"), who petitioned to be named their legal guardian. Grandmother

had the Children in her care for approximately two-and-a-half years at the time of the

permanency and guardianship hearing, which took place on June 29, 2020.

 1
 This court has consolidated four appeals: two juvenile court appeals, each concerning one of the two
children, WD84042 and WD84043, and two probate court appeals, each concerning one of the two children,
WD84019 and WD84020. All are ruled on in this opinion as consolidated under the WD84019.
 2
 The Juvenile Officer did not file a brief or participate in this appeal.
 3
 The term "permanency plan" is not specifically defined in the juvenile code; however, it is described as a
plan for "the child’s immediate and long-term placement goals[.]" Section 210.564.3(5) RSMo (2016).
 4
 The oldest child chose to remain in foster care and was not returned to Mother.

 2
 At the hearing, the Children's Division caseworker, LaTroya Jamison ("Jamison"),

testified that in the year that she had been the caseworker for the Children, Mother had

lived in Ohio, and at the time of the hearing, she was living in Illinois. Mother had seen

the Children twice during that time, in September of 2019 and in March of 2020.

Additional visits could have been scheduled, but Mother had missed most of the monthly

Family Support Team meetings ("FSTs") during the year that Jamison was the Children's

caseworker. Although Mother claims that she was not notified of all of the FST meetings,

the Juvenile Officer testified that the Children's Division notifies the parents and their

attorneys of all FST meetings. After the COVID-19 restrictions took effect, Mother

scheduled a single ZOOM visit with the Children, but she failed to log on for the visit.

Mother further failed to maintain phone contact with the Children.

 At the time of the hearing, Mother lived in a mobile home in Illinois with her

youngest child, a female friend, and the friend's two children. Mother testified that if the

Children were returned to her, they could stay in the bedroom she was in, and she would

sleep in the living room. Mother admitted that she had not always notified her caseworker

of her address changes as required by the permanency plan. Also, despite a history of

mental illness, Mother testified that she is "fine," and she does not take the prescribed

medication to treat that illness.

 At the hearing, all witnesses except Mother testified that it would be in the

Children's best interests for the guardianship to be granted. In its judgment, the trial court

granted the guardianship and terminated the juvenile cases, finding that Mother was unable

and unwilling to assume the duties of caring for the Children based on the evidence

 3
presented. The court found that Mother had not provided her addresses to the caseworker

as required by the permanency plan. The judgment also found that Jamison had been

unable to verify whether Mother's housing situation was appropriate. The judgment noted

that Mother had represented that she suffered from a disability, but that she had not

provided any proof of treatment. Mother testified that she received social security

disability benefits of $703 per month, but she had not provided any proof of that to her

caseworker as of the date of the hearing. The judgment also found that Mother did not

have transportation, but could get rides from a former boyfriend. Finally, the judgment

noted that Mother had missed several of her FST meetings and that she had not called to

speak with the Children nor had she seen the Children on a regular basis.

 Mother filed a notice of appeal, but did not include the filing fee, as she was

determined to be indigent. The circuit clerk did not accept the submissions for filing that

day. Mother's counsel paid the docketing fees, but the clerk marked them as filed on the

day the fees were processed, not the date they were electronically submitted. If the notice

of appeal was untimely this court would lack the authority to decide the issues presented.

Section 512.050.5

 Standard of Review

 "The trial court's judgment in guardianship proceedings is to be affirmed unless it is

unsupported by substantial evidence, is against the weight of the evidence, or erroneously

declares or applies the law." In re L.M., 488 S.W.3d 210, 213-14 (Mo. App. E.D. 2016).

 5
 All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement,
unless otherwise indicated.

 4
"A claim that there is no substantial evidence to support the judgment or that the judgment

is against the weight of the evidence necessarily involves review of the trial court's factual

determinations, and a court will only overturn a judgment under these fact-based standards

of review when the court has a firm belief that the judgment is wrong." Id. at 214. We

give the trial court due regard with respect to judging the credibility of witnesses. Id. We

review questions of law de novo. Pearson v. Koster, 367 S.W.3d 36, 43 (Mo. banc 2012).

 Discussion

 Mother's first point on appeal is that her failure to pay the docketing fees at the time

she electronically submitted her notices of appeal of the juvenile court orders for filing did

not render the notices untimely because a docketing fee does not affect the validity of the

notice of appeal since the Missouri legislature amended section 512.050 in 1997 to

eliminate the requirement of a docket filing fee. The Missouri Supreme Court affirmed

this very principle in Goldsby v. Lombardi, 559 S.W.3d 878, 881-82 (Mo. banc 2018).

Goldsby held that the Supreme Court, "lost the authority to impose a jurisdictional docket

fee prerequisite when the legislature removed the docket fee language from section 512.050

in 1997." Id. at 884. Goldsby goes on to say that although the Rules may still "impose

additional requirements for prosecuting an appeal, those requirements cannot affect 'the

validity of the appeal.'" Id. at 883. Under Rule 84.08, Mother was entitled to notice of the

defect of failing to pay the docket fees and up to fifteen days to remedy the defect before

her appeals could be dismissed. See id. at 885. This Court did not issue Mother a Rule

84.08 notice, and her counsel paid her docketing fee nine days after submitting the notices

 5
of appeal. Accordingly, Mother's appeals are timely and we have the authority to reach the

issues presented. Point I is granted.

 Mother's substantive second point on appeal is that the trial court's judgment finding

her unwilling or unable to assume the duties of guardianship is against the weight of the

evidence because Mother testified at the hearing that she had given notice of some of her

changes of address to her caseworker, because she testified that she did receive disability

benefits, and because "Mother had custody and control of her three-year-old child[,] yet no

one thought she was unfit, unwilling, or unable to be that child's natural guardian." We

disagree that the judgment was against the weight of the evidence.

 We first note that in her brief, Mother has failed to perform the required analysis

for an against the weight of the evidence challenge. Ivie v. Smith, 439 S.W.3d 189 (Mo.

banc 2014).

 Appellate courts act with caution in exercising the power to set aside a decree
 or judgment on the ground that it is against the weight of the evidence. JAS
 Apartments, Inc. v. Naji, 354 S.W.3d 175, 182 (Mo. banc 2011). "[A] claim
 that the judgment is against the weight of the evidence presupposes that there
 is sufficient evidence to support the judgment." In re J.A.R.[v. D.G.R.], 426
 S.W.3d [624, 630 (Mo. banc 2014). In other words, "weight of the evidence"
 denotes an appellate test of how much persuasive value evidence has, not just
 whether sufficient evidence exists that tends to prove a necessary fact. See
 White v. Dir. of Revenue, 321 S.W.3d 298, 309 (Mo. banc 2010) (stating that
 "weight" denotes probative value, not the quantity of the evidence). The
 against-the-weight-of-the-evidence standard serves only as a check on a
 circuit court's potential abuse of power in weighing the evidence, and an
 appellate court will reverse only in rare cases, when it has a firm belief that
 the decree or judgment is wrong. See JAS Apartments, Inc., 354 S.W.3d at
 182.

Id. at 206-207.

 6
 A party raising an against the weight of the evidence challenge must follow the four-

step analytical sequence for raising such a challenge as set forth in Houston v. Crider, 317

S.W.3d 178, 187 (Mo. App. S.D. 2010):

 (1) identify a challenged factual proposition, the existence of which is
 necessary to sustain the judgment;

 (2) identify all the favorable evidence in the record supporting the existence
 of that proposition;

 (3) identify the evidence in the record contrary to the belief of that
 proposition, resolving all conflicts in testimony in accordance with the trial
 court's credibility determinations, whether explicit or implicit; and,

 (4) demonstrate why the favorable evidence, along with the reasonable
 inferences drawn from that evidence, is so lacking in probative value, when
 considered in the context of the totality of the evidence, that it fails to induce
 belief in that proposition.

Meseberg v. Meseberg, 580 S.W.3d 59, 66 (Mo. App. W.D. 2019).

 In her brief, Mother fails to even attempt to follow the four-step analysis set forth

above, but instead attempts to reargue the facts in the light most favorable to her position.

Although Mother identifies the challenged proposition--the finding that the juvenile actions

should be terminated and guardianships should be granted to Grandmother--she fails to

identify the favorable evidence in the record that supports the trial court's judgment or

explain why that evidence and its reasonable inferences require the conclusion that the trial

court could not reasonably decide that it was in the Children's best interests that a

guardianship should be granted in a person other than Mother. "Without any of this

analysis, [Mother's] argument lacks any analytical or persuasive value." J.A.R. v. D.G.R.,

426 S.W.3d 624, 631 n.12 (Mo. banc 2014). A review of the record and the trial court's

 7
judgment establishes the grant of the guardianships in this matter was proper and supported

by credible evidence.

 A court should not appoint a guardian for a minor child if there is a parent "available,

willing, and able to care and provide for the child." In re L.M., 488 S.W.3d at 215. There

is a rebuttable presumption that a parent is the appropriate custodian for his or her child.

Id. "That presumption can be overcome, however, if there is sufficient evidence presented

that the parent is unfit, unwilling, or unable to take charge of the child." Id.

 Mother contends that her current custody of her youngest son establishes that she is

fit, willing, and able to care for B.K.F. and D.J.F. Although Mother's youngest child may

have been returned to her care at some point, all of her children were removed from her

home on two prior occasions. The Children at issue in this appeal had been in foster care

for two-and-a-half years before being returned to Mother's care in November of 2017 for a

matter of weeks before they were removed a second time for an additional two-and-a-half

years, during which time Mother was mostly out of state and failed to make reasonable

efforts to see the Children. And of Mother's five children, only the youngest one has been

returned to her care.

 Moreover, Mother has failed to establish any reasonable visitation with the Children

for almost the entire past five years. The trial court found that Mother failed to participate

in several FST meetings, even by telephone, so that visits with the Children could be

scheduled, and that Mother failed to visit or telephone the Children frequently. And

Grandmother testified that Mother failed to participate in a virtual visit with the Children,

scheduled over Zoom, during the period during which in-person visits were prohibited due

 8
to COVID-19. Although Mother testified that she did not receive notice of the FST

meetings, testimony at the hearing reflected that both Mother and her counsel were notified

of all of the meetings. Mother also did not testify that she ever took the initiative to inquire

about when the meetings were being held if she did not in fact receive notice. The trial

court's finding that Mother was unwilling or unable to assume the duties of guardianship

over the Children is not against the weight of the evidence. The judgment of the trial court

is affirmed.

 Gary D. Witt, Judge

All concur

 9