

**In the**
**Missouri Court of Appeals**
**Western District**

ANITA MARTIN, )
)
Appellant, )
) **WD86410**
v. ) **OPINION FILED:**
) **APRIL 2, 2024**
CHRISTOPHER MARTIN, )
)
Respondent. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable J. Dale Youngs, Judge**

**Before Division Two: Anthony Rex Gabbert, Presiding Judge,**
**Karen King Mitchell, Judge, Janet Sutton, Judge**

Anita Martin appeals the judgment of the Jackson County Circuit Court dismissing her petition with prejudice. Her petition sought relief under Missouri's Uniform Fraudulent Transfers Act. The court determined the petition was filed outside the statute of limitations. In the sole point on appeal, she claims she did not know and could not have reasonably known of the fraudulent transfer more than one year prior to filing her petition. The judgment is reversed and remanded.

## Facts

In February 2023, Anita Martin ("Appellant") filed a petition in the Jackson County Circuit Court against Christopher Martin ("Respondent") and Yolanda Martin

("New Wife"). The petition alleged the following: Appellant and Respondent used to be married. Their divorce was finalized in September 2006 in Johnson County, Kansas.[1]

At the time of their divorce, Respondent was ordered to pay $1,030 per month in child support and $1,333 per month in spousal maintenance to Appellant. The spousal maintenance obligation had a term of sixty consecutive months. The amount of child support and maintenance was adjusted periodically since the divorce decree was entered, with the most recent adjustment occurring in July 2018. Respondent has been in arrears with respect to child support and spousal support since 2007. Respondent has been ordered at least seven times by the Johnson County, Kansas court to pay past due child support arrears.

Sometime prior to 2018, Respondent and the woman he remarried (New Wife), along with other National Football League ("NFL") players, filed a lawsuit against the Kansas City Chiefs ("Chiefs Lawsuit") for compensation for injuries or potential injuries sustained by Respondent and New Wife during Respondent's time as a professional football player. Appellant, who has an outstanding judgment against Respondent, placed a judgment lien on any judgment or settlement proceeds payable to Respondent from the Chiefs Lawsuit. Respondent settled with the Kansas City Chiefs in or around August 2018 for approximately $1,300,000. Respondent did not make any effort to pay his child

---

[1] While there are multiple references to court proceedings in Johnson County, Kansas, the current case was filed in Jackson County, Missouri. Both Respondent and New Wife are Missouri residents. No party raises with this court any claim of any error regarding the filing of this case in Missouri.

support arrears owed to Appellant. Respondent's counsel for the Chiefs Lawsuit did not satisfy the judgment lien on the settlement proceeds.

In September 2019, Appellant filed a motion for civil contempt against Respondent in Johnson County, Kansas on the basis that Respondent remained in arrears for his child support obligation. A contempt hearing was held on March 4, 2022 on the motion for civil contempt, the State of Kansas's motion to clarify orders regarding child support and determine arears, and Appellant's motion to increase child support. The court found Respondent was in indirect civil contempt and owed Appellant $94,657.67. To purge himself of the contempt order, the judge ordered Respondent to satisfy the child support balance owed by making a cash payment in that amount. The court made the following findings:

> [The] Court notes the following as examples of the Respondent's conduct, but this is not an exhaustive list demonstrated through the evidence presented at trial. The Plaintiff received, from Respondent, a parcel of real estate in Alabama, as part of Plaintiff's collection efforts. Following this transfer, the Respondent then executed a Quit Claim Deed transferring an interest in the property to a family member. This act clouded the title to the property and, in essence, made the transfer worthless and of no value. In addition, the Respondent had transferred assets to his spouse in order to evade collection efforts and to ostensibly create an appearance of the lack of an ability to pay past due support judgments. Nonetheless, the Respondent, by his own testimony, stated that he has received a settlement from the NFL and other entities in 2018 of approximately $300,000.00.[2] There was a lien on the settlement proceeds by virtue of the action filed in Missouri in favor of Plaintiff, yet the lien was not honored by the settling party, the Respondent's attorney, or the Respondent. Instead, Respondent indicated that he received those funds but paid none of that to Plaintiff to satisfy and/or reduce the existing judgment/court orders regarding past-due

---

[2] It appears this is the amount that remained after attorneys' fees and costs had been paid.

3

support. Respondent further testified that he took the remaining settlement monies (after fees were deducted by his personal injury lawyers) and applied it to his own needs by purchasing a home which he then appears to have titled solely in his current Wife's name. Similar efforts appear to have been taken with respect to his primary marital residence in Kansas City, Missouri (titled only in her name), based upon the evidence, as well as with numerous high-priced luxury automobiles. These are willful acts which this Court conclude are reflective of Respondent's bad faith and his unwillingness to pay his debts and comply with the Court's prior orders–despite an ability to address the same.

…

[H]aving reviewed the evidence in this case and having heard the testimony of the witnesses, that the facts clearly demonstrate that the Respondent has willfully violated the Court's orders and existing judgments and has intentionally obfuscated in bad faith what is essentially bordering on fraudulent conduct as it relates to trying to pay the outstanding arrearage and judgments that have been previously entered by this Court.

…

[T]his Court believes he has not only the ability to pay but the assets to pay and the resources to pay given the numerous properties, the numerous vehicles that this Court believes are in effect his with his wife, the fact that there were hundreds of thousands of dollars received from the NFL settlement that were immediately transferred to a home that was then titled in his wife's – new wife's name, does not make them any less his property.

Since the entry of the order of contempt, Respondent and New Wife sold their prior residence and moved to a new residence. Since becoming indebted to Appellant, Respondent has transferred real property, assets, and money to New Wife in an effort to evade the debt owed to Appellant. Respondent currently has the following unpaid judgments against him: (1) $94,657.61 in April 2022, for outstanding child support arrears and interest; (2) $23,927 entered in May 2008; (3) $10,000 for attorney's fees; and (4) $26,000 in attorney's fees.

The petition alleged one count – a claim for violation of Missouri's Uniform Fraudulent Transfer Act. It stated that Respondent's transfers of property and settlement funds from the Chiefs Lawsuit were made with actual intent to hinder, delay or defraud Appellant without receiving a reasonably equivalent value in exchange for the transfer. It claimed that Appellant was greatly damaged by the fraudulent transfers. The petition asked the court to order all transfers from Respondent to New Wife void to the extent necessary to satisfy Appellant's claims against Respondent. It also sought a preliminary and permanent injunction against New Wife to stop her from otherwise disposing of the assets, asked that New Wife be held jointly and severally liable for all outstanding amounts owed to Appellant, and requested such other relief as the court deems just and proper.

In June 2023, Respondent and New Wife filed their answers to the petition. They also filed a motion to dismiss on statute of limitations grounds. Appellant filed her suggestions in opposition to the motion to dismiss. Respondent and New Wife filed a reply in support of their motion to dismiss.

In June 2023, the Jackson County, Missouri court dismissed Appellant's petition with prejudice. It found that the petition alleged the fraudulent transfers occurred in August 2018 and October 2016. The court noted the four-year statute of limitations applicable to transfers or, in some circumstances, the one-year statute of limitations applicable to when the transfer was discovered or reasonably could have been discovered. It found that Appellant's petition was outside of either of those timelines.

5

This appeal follows.

## Standard of Review

"We review the trial court's grant of a motion to dismiss *de novo.*" *Brown v. Pint*, 632 S.W.3d 453, 456 (Mo. App. W.D. 2021) (internal quotation marks omitted). "Whether a statute of limitations bars an action is a question of law, which is subject to *de novo* review." *Id*. (internal quotation marks omitted). "Though the statute of limitations is an affirmative defense that ordinarily must be raised in a responsive pleading and proven with evidence, Rule 55.08, [i]f it clearly appears from the petition that a cause of action is barred by a statute of limitations, a motion to dismiss on that ground is properly sustained." *Id*. (internal quotation marks omitted).

"When a statute of limitations defense is raised, we must give the pleading its broadest intendment, treat all facts as true, and construe the allegations favorably to the plaintiff." *Richest v. City of Kansas City*, 643 S.W.3d 610, 613 (Mo. App. W.D. 2022). "Where a statute of limitations is asserted in support of a motion to dismiss, the petition should not be dismissed unless the petition clearly establishes on its face and without exception that it is time barred." *Id*. (internal quotation marks omitted). "A motion to dismiss properly raises the defense of the statute of limitations when it is clear from the face of the petition that the action is barred by time limitations." *Id.* (internal quotation marks omitted). "Conversely, where the petition does not show on its face that it is barred by limitations, a motion to dismiss should not be sustained." *Id.* (internal quotation marks omitted).

"[T]his Court will affirm a judgment of dismissal if any ground supports the motion, regardless of whether the trial court relied on that ground." *Goldsby v. Lombardi*, 559 S.W.3d 878, 881 (Mo. banc 2018) (internal quotation marks omitted). "If the motion to dismiss cannot be sustained on any ground alleged in the motion, the trial court's ruling will be reversed." *Id*. (internal quotation marks omitted).

**Analysis**

In her sole point on appeal, Appellant claims the trial court erred in dismissing her petition. She states that the petition does not support a finding that she knew or could reasonably have known of the fraudulent transfer more than one year prior to the filing of the petition. Appellant states the petition references the transfer but fails to provide a date more than one year prior to the filing of the petition.

The Uniform Fraudulent Transfer Act is found in sections 428.005-428.059. Section 428.005.[3] Section 428.024 states in relevant part:

> 1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

[3] All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement unless otherwise indicated.

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

2. In determining actual intent under subdivision (1) of subsection 1 of this section, consideration may be given, among other factors, to whether:
(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 428.029.1 states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Section 428.039 states in relevant part:

1. In an action for relief against a transfer or obligation under sections 428.005 to 428.059, a creditor, subject to the limitations in section 428.044, may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(c) Any other relief the circumstances may require.

2. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Section 428.049 provides:

A claim for relief or cause of action with respect to a fraudulent transfer or obligation under sections 428.005 to 428.059 is extinguished unless action is brought:

(1) Under subdivision (1) of subsection 1 of section 428.024, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) Under subdivision (2) of subsection 1 of section 428.024 or subsection 1 of section 428.029, within four years after the transfer was made or the obligation was incurred; or

(3) Under subsection 2 of section 428.029, within one year after the transfer was made or the obligation was incurred.

In her petition Appellant alleged:

27. [Respondent's] transfers of property and settlement funds were made with actual intent to hinder, delay or defraud [Appellant] and without receiving a reasonably equivalent value in exchange for the transfer.

28. The transfers were:

a) A conveyance to a spouse or near relative;
b) Without sufficient consideration;
c) Different from the usual method of transacting business;
d) Performed in anticipation of suit or execution;
e) Allowed for the continued retention of possession by the debtor, [Respondent];
f) The transfer of all or nearly all of the debtor's property; and
g) An act or transfer which resulted in insolvency of the debtor, [Respondent].

This tracks the language found in section 428.024.1(1)-(2) and in section 428.029.1.[4]

Thus, the statute of limitations for a claim under section 428.024.1(1) is four years after the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered. The statute of limitations for a claim under section 428.024.1(2) or section 428.029.1 is four years after the transfer was made or the obligation was incurred. In granting the motion to dismiss, the trial found in relevant part:

> According to plaintiff's petition, the transfers at issue occurred in August of 2018 and October of 2016.
> …
> Not only did plaintiff file her action outside the four-year statutory limitations period for claims brought under sections 428.024.1(2) or 428.029(1) and (2), even if plaintiff is asserting her claim under section

---

[4] Respondent argues in his Respondent's brief that Appellant's petition does not identify the statutory provision under which she is bringing her claims. He made the same argument in his motion to dismiss in the context of determining the applicable statute of limitations. In her suggestions in opposition to the motion to dismiss, Ex-Wife stated that her petition "quotes the exact language from §429.024.1." *See also Konopasek v. Konopasek*, 683 S.W.3d 250, 260-61 (Mo. banc 2023) (The plaintiff "adequately pleaded a claim for relief under section 428.024.1(1) because she alleged facts that, if true, demonstrate she is [the defendant's] creditor and he made a transfer with the actual intent to hinder, delay, or defraud her. Similarly, she pleaded a claim for relief under section 428.029.1 because she also alleged [the defendant] made the transfer without receiving a reasonably equivalent value in exchange and either was insolvent or became insolvent as a result of the transfer.").

428.024.1(1), plaintiff *knew* of the transfers more than a year prior to filing her action. This fact is shown by her references in her petition to the September 2019 Motion for Civil Contempt she filed against defendant in the District Court of Johnson County, Kansas in which she referenced both of them. Plaintiff's claims here are simply filed too late under either scenario.

The September 2019 motion for civil contempt was attached to the petition as Exhibit F. It stated that Respondent settled his claims against the Kansas City Chiefs and the case was dismissed in September 2018.[5] It also stated that Respondent lived at a home on 60th Terrace in Kansas City, Missouri with New Wife. The home was valued at approximately $149,000. In an attempt to avoid collection, Respondent transferred title of the home exclusively to New Wife in October 2016.

On appeal, Appellant argues that the petition at issue in this case did not allege that the fraudulent transfer occurred with respect to the transfer of the funds between the Kansas City Chiefs and Respondent. Instead, she states that the petition focused on the fraudulent transfer from Respondent to New Wife of the settlement funds from the Chiefs Lawsuit. Accordingly, Appellant claims that the date the Kansas City Chiefs paid Respondent the settlement funds is irrelevant to her claim and the statute of limitations. She states that her petition was filed within one year of learning of the transfer of settlement funds from Respondent to New Wife.

---

[5] The petition alleged that Respondent settled with the Kansas City Chiefs in or around August 2018.

Appellant's petition alleged the following: A contempt hearing was held on March 4, 2022.[6] The Kansas court stated in its contempt judgment resulting from that hearing that Respondent testified that he received approximately $300,000 in settlement funds from the Chiefs Lawsuit. He took the settlement received from the Kansas City Chiefs in 2018 and "applied it to his own needs by purchasing a home which he then appears to have titled solely in his current Wife's name." The court noted that Respondent had done the same thing with his primary marital residence in Kansas City, Missouri as well as with numerous high-priced luxury automobiles. The court later stated that Respondent transferred hundreds of thousands of dollars received from the NFL settlement into a home titled only in New Wife's name.[7] As of March 2022, Respondent and New Wife resided at a home on 60th Terrace in Kansas City, Missouri. Since the April 2022 entry

---

[6] Appellant states that the contempt hearing occurred on March 4, 2022. Exhibit H, attached to the petition, is a transcript. The transcript cover page states the hearing occurred in November 2021. Appellant states this is an error. The transcript's title states it is a transcript of a digital ruling. In it, the Kansas court states: "The Court has this matter on to announce the Court's ruling with respect to the trial that was previously conducted back on March 4th." Paragraph 17 of Appellant's petition states that the contempt hearing occurred on March 4, 2022. In his answer to the petition, Respondent states in response to paragraph 17 that Exhibit G speaks for itself. Exhibit G is the Kansas court's journal entry. That document states that the contempt hearing occurred on March 4, 2022 and that the court's ruling was announced on March 25, 2022. This is consistent with the body of the transcript. At oral argument, counsel for Respondent stated she did not know when the contempt hearing occurred. For purposes of this appeal, we use March 4, 2022 as the date from which the one-year statute of limitations began to run. On remand, the trial court is free to consider evidence that the hearing occurred on another date.

[7] In his Respondent's brief, Respondent claims that Appellant's petition only identified the 2016 retitling of the primary residence and the 2018 transfer of settlement funds from the Kansas City Chiefs to Respondent. To the contrary, the petition discusses in detail the Kansas court's finding that Respondent took the settlement funds and transferred those to New Wife after he received them in 2018.

of contempt, Respondent and New Wife sold that residence and now reside on 76th Terrace in Kansas City, Missouri.

In her suggestions in opposition to the motion to dismiss, Appellant argued the following: In August 2018, Respondent received a settlement from the Kansas City Chiefs in the amount of $1,293,750.00.  Respondent testified at the March 4, 2022, contempt hearing in Kansas.  Respondent testified that took those settlement monies and used them to purchase assets in New Wife's name.  The suggestions in opposition stated:

> The first time Plaintiff could reasonably have learned about [Respondent's] fraudulent transfer of the settlement funds from the Kansas City Chiefs lawsuit, was when he expressly testified to the transfer during the March 4, 2022 hearing.  Prior to that time, the possessor of the funds was completely unknown to Plaintiff or her counsel.[8]

Appellant argued in her suggestions in opposition, as she does on appeal, that the date Respondent received the settlement funds is not relevant.  Instead, the relevant date is the date she learned that Respondent transferred those funds to New Wife.[9]  The suggestions in opposition state:

---

[8] Appellant's argument on appeal can be summarized as she did not know what Respondent did with the settlement funds from the Chiefs Lawsuit until Respondent testified at the March 4, 2022 contempt hearing, and Appellant filed the current lawsuit within one year of that hearing where she learned of the fraud.  At oral argument, counsel for Respondent stated that Appellant "never once said that to the trial court below."  The quoted language above, from paragraph 27 of Appellant's suggestions in opposition to the motion dismiss, shows otherwise.

[9] At oral argument, counsel for Respondent stated that Appellant never identified for the trial court the transfers she was complaining about which led the trial court to have to "cobble together" the transfers.  This, according to counsel for Respondent, is why the trial court identified the two transfers as the 2016 interest in a house and the 2018 payment of settlement funds.  Paragraph 28 of Appellant's suggestions in opposition states: "Clearly, it is not the transfer of the funds from the Chiefs to Mr. Martin that Plaintiff is basing her claims upon.  Instead, it is the covert transfer of those funds from Mr. Martin to his current wife. Mr. Martin

13

> Undoubtedly, with respect to the transfer of the settlement proceeds, Plaintiff could not have known about the transfer of those proceeds from [Respondent] to [New Wife] until March 4, 2022. At the very least, it is a disputed fact that the Court should be allowed to hear via trial.[10]

Appellant's petition claiming a violation of the Uniform Fraudulent Transfer Act was filed on February 16, 2023 – less than one year after the March 4, 2022 contempt hearing.

There are several transfers identified in Appellant's petition.[11] Respondent transferred title of his primary residence on 60th Terrace in Kansas City, Missouri to

---

expressly testified that he made the transfer so that those funds could late[r] be used for his benefit." Appellant was clear in her argument to the trial court that she was complaining about the transfers of the settlement funds from Respondent to New Wife which would necessarily occur after he received those funds in 2018.

[10] This is quoted from paragraph 35 of Appellant's suggestions in opposition to the motion to dismiss. Contrary to counsel for Respondent's assertions at oral argument, this argument was presented to the trial court.

[11] Respondent argues in his Respondent's Brief that Appellant's petition never specifically identifies which transfers she alleged to be fraudulent or when they occurred. He concludes that it fails to allege necessary ultimate facts. Respondent had previously filed a motion to dismiss the petition in part because the petition failed to allege a claim with sufficient specificity. The trial court denied that motion to dismiss.

"Missouri is a fact-pleading state." *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 425 (Mo. banc 2019). "But the facts that must be pleaded are the ultimate facts, not evidentiary facts." *Id.* "Ultimate facts are those the jury must find to return a verdict for the plaintiff." *Id.* "The goal of fact pleading is the quick, efficient, and fair resolution of disputes." *State ex rel. Harvey v. Wells*, 955 S.W.2d 546, 547 (Mo. banc 1997). "Fact pleading identifies, narrows and defines the issues so that the trial court and the parties know what issues are to be tried, what discovery is necessary, and what evidence may be admitted at trial." *Id.* "The proper remedy when a party fails to sufficiently plead the facts is a motion for more definite statement pursuant to Rule 55.27(d)." *Id.*

At oral argument, counsel for Respondent cited *Konopasek v. Konopasek*, 683 S.W.3d 250 (Mo. banc 2023), for the proposition that circumstances constituting fraud must be pleaded with particularity but intent can be pleaded generally. That is a misreading of the case. In *Konopasek*, the first issue before the court was whether moving funds into a bank account the debtor shared with his wife as tenants in the entirety constituted a transfer under Missouri's Uniform Fraudulent Transfers Act. *Id.* at 257. The issue was not whether the transfers had been pleaded with sufficient ultimate facts. The second point on appeal in *Konopasek*, however, was whether the plaintiff had sufficiently pleaded the debtor's intent to hinder, delay, or defraud the creditor. *Id.* at 258. The Missouri Supreme Court overruled prior cases holding that a plaintiff

14

New Wife in October 2016. Respondent received settlement funds from the NFL in August 2018. Sometime after receiving the settlement funds, Respondent took the settlement funds and purchased a home with them that he titled solely in New Wife's name. Sometime after April 2022, Respondent and New Wife sold the residence on 60th Terrace in Kansas City, Missouri and now reside on 76th Terrace in Kansas City, Missouri. There is also reference to the purchase of luxury automobiles.

The petition asked the court to "order all monetary transfers or transfers of personal assets from [Respondent] to [New Wife]—specifically any transfer of title of [Respondent's] settlement proceeds, residence, personal property, or vehicles, which were made between 2015 to present date—are void…." It seems that some, if not all, of the allegedly fraudulent transfers occurred more than four years before Appellant filed her petition. There is no evidence at this stage of the proceeding, however, that Appellant

must plead facts supporting the existence of badges of fraud to state claim. *Id*. at 260 n.9. It held that intent can be generally averred. *Id*. at 260.

The petition in this case quotes the Kansas court's ruling from the contempt hearing extensively. In addition to quoting the language, paragraphs 20 and 22 of the petition contain language that is in bold and/or italics text. That language talks about Respondent receiving the settlement funds, not paying Appellant the money he owes her, and using the settlement funds to purchase a home solely in New Wife's name. The petition identifies "any transfer of title to [Respondent's] settlement proceeds, residence, personal property, or vehicles, which were made between 2015 to present date." The petition sets forth the findings of the Kansas court that Respondent took his NFL settlement funds and put them in a house titled only in New Wife's name and that Respondent put funds into luxury automobiles. This is sufficient. *See, e.g., State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 182 n.7 (Mo. banc 2019) (dismissal not proper where some of the conduct is undated and might fall within the statute of limitations); *Konopasek*, 683 S.W.3d at 260 ("Because [the plaintiff] was required only to plead the ultimate fact … [the plaintiff] sufficiently pleaded [the defendant's] actual intent to hinder, delay, or defraud any creditor when she alleged [the defendant] transferred assets 'with the actual intent to hinder, delay and/or defraud [the plaintiff] from collecting on the Clay County Judgment and the Benton County Judgment.'").

learned of all of these allegedly fraudulent transfers more than one year before filing her petition. To the contrary, she states that she did not learn what Respondent did with the settlement money until he testified at the contempt hearing in March 2022.

Under our standard of review, "we must give the pleading its broadest intendment, treat all facts as true, and construe the allegations favorably to the plaintiff." *Richest*, 643 S.W.3d at 613. "[T]he petition should not be dismissed unless the petition clearly establishes on its face and without exception that it is time barred." *Id.* (internal quotation marks omitted). Nothing in the petition suggests Appellant knew about the use of the NFL settlement funds to purchase a second home in New Wife's name until the March 4, 2022 contempt hearing. Appellant affirmatively alleges that she did not. Many of the other transfers identified in the petition are undated. We recognize that the petition may not be a model of clarity in terms of cataloging each of the specific transfers which Appellant contends is fraudulent and the date on which each such transfer occurred. Nevertheless, because there is at least one claim that might not be time barred, the dismissal of the petition with prejudice must be reversed. *See State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 182 n.7 (Mo. banc 2019) ("Dachenhausen's … claims survive Halsey's motion to dismiss because at least some of the conduct alleged in support of those claims is undated and (if given the most favorable reading…) must be considered for purposes of Halsey's motion to dismiss to have occurred within the limitations period.").

16

This does not mean that any or all claims are within the applicable statute of limitations. Our holding is that Appellant's petition does not show on its face that it is barred by the statute of limitations and, thus, a motion to dismiss should not have been sustained. *Richest*, 643 S.W.3d at 613. On remand, nothing prevents Respondent from filing a motion for a more definite statement pursuant to Rule 55.27(d), asserting the statute of limitations as an affirmative defense, or raising his statute of limitations arguments again in a properly supported motion for summary judgment pursuant to Rule 74.04.

The point is granted.

## Conclusion

The judgment is reversed and remanded for proceedings consistent with this court's opinion.

_____
Anthony Rex Gabbert, Judge

All concur.

17